(Decided June 30th, 1898.)

---

## JENNIE W. MERCER ET AL. *vs.* LEWIS N. HOPKINS, TRUSTEE, ET AL.

## ELIZABETH W. HOWARD *vs.* THE TRUSTEES ET AL.

*Construction of Will—Acceleration of Remainder—Equitable Life Interest—Rule in Shelley's Case.*

J. H., by his will, gave certain real and personal property to trustees in trust to pay three-eighths of the rents, etc., to testator's niece, E., for her life, and after her death to apply the income to the education and maintenance of E.'s children then living until the expiration of the period of twenty years after the death of E., at which period said three-eighths

of the property, together with any surplus income, shall vest absolutely in the children of E. The trustees were directed to pay and hold upon similar terms two-eighths of the property for J. for life, etc.; one-eighth thereof for M. for life; one-eighth thereof for A. for life, etc.; one-eighth for J. M. M. All of these parties except J. M. M., who was the husband of E., were nephews and niece of the testator and children of his brother Samuel. By a subsequent clause of the will it was provided that "if any of the children of my deceased brother Samuel should die without leaving any child or children, or if any child of any one of the children of my said deceased brother, shall depart this life after the death of his or her parent, and before the expiration of the period of 20 years after the death of his or her parent (such parent being a child of my said deceased brother), then it is my will that the share of the child or children of my said brother, so dying, and of the grandchild or grandchildren of my said brother, so dying, shall be held by my said trustees in trust as to the realty, for the heirs at law of said deceased child or grandchild, and in trust as to the personalty, for such persons as under the laws of this State would be entitled to be the distributees of the personal estate of such deceased child or grandchild; subject, however, in all respects, to the other limitations appointed by this, my last ˙will, in reference to the shares of the children of my said deceased brother in so far as such limitations are applicable."

The will contained a later clause, providing that in case any devise or legacy should fail to take effect for any reason whatsoever, then the property therein included should go to the J. H. Hospital. A codicil gave the residue of the testator's estate not otherwise disposed of, to the J. H. Hospital and the J. H. University. Upon a bill filed for the construction of the will, *Held:*

1st. That upon the death of any nephew after the testator, the trustees held the legal estate in his share until the expiration of the above mentioned twenty year period, while the beneficial interest was vested in the child of such nephew, and that, consequently, the estate of such child did not become absolute under the Rule in Shelley's case.

2d. That in the case of the death of a nephew without leaving children, the income of his share was payable to his heirs or distributees for twenty years after his death, and vests finally in those who, at the end of that period, answer the description of his heirs and distributees.

3d. That the fact that some of the persons who may be entitled to the income derived from the share of a nephew dying without issue, might be too far advanced in life to be "educated and maintained" during the twenty year period, does not conflict with this construction of the will, but the income from such share would accumulate in the hands of the trustees until the estate is to vest in the heirs and distributees, namely, at the end of the twenty year period.

4th. That the estates devised to the nephews could not pass under their wills since they took only equitable life estates, and that the estate of a child of a nephew who died before the expiration of the twenty year period could not be devised by him, because until the end of that period he did not have an indefeasible vested estate.

5th. That the share given to A., the testator's nephew who pre-deceased him, unmarried and without issue, does not pass to the J. H. Hospital under the "fail to take effect" clause, but the same goes to the heirs and distributees of A. at the end of the twenty years from his death, the vesting of the remainder being thereby accelerated, and before the end of such period the income of A.'s share was payable to his heirs and distributees for the time being.

S., a child of E. above mentioned, whom he survived, executed before the end of the twenty year period, a deed of trust, conveying his property to be held in trust for himself for life, then for his widow for her life, and at her death for S.'s right heirs. *Held,* that the Rule in Shelley's case did not operate to give back to S. a fee subject to the widow's life estate, because the two estates are not of the same quality, one being equitable and the other legal.

Appeals from the Circuit Court of Baltimore City (WICKES, J.). The will of Johns Hopkins, construed in this case, is dated July 9th, 1870. The first codicil

is dated October 31st, 1871, and the second codicil
December 13th, 1873. In this latter, the testator made
a few minor changes in his will, not affecting the prop-
erty concerned in this case, and added " In other re-
spects I do confirm my said will and any codicil thereto
heretofore made." The testator died December 24th,
1873. After the clause of the will giving three-eighths
of the property in question in this case, to trustees for
Ella W. Mercer, the next clause provided for the pay-
ment of one-eighth of the rents, etc., to J. M. Mercer,
husband of Ella W. Mercer, for life, and after his death
to apply so much as might be necessary of said one-
eighth of the rents, etc., to the education, etc., of E.'s
children until the end of twenty years after her death
when " one-eighth part of the said property, together
with any surplus income, etc., shall vest absolutely in
the child or children of the said " Ella W. Mercer.

The next clause was as follows: " and upon the fur-
ther trust to pay semi-annually two-eighths part of the
clear rents," etc., " thereof, to my nephew, John J.
Hopkins, for the period of his natural life," etc., exactly,
*mutatis mutandis*, as in the Ella clause, quoted in the
opinion of the Court. In the same terms the next
clause provided for a one-eighth part whereof the rents,
etc., should be paid " to my nephew, Mahlon Hopkins,"
etc., as before. And the next clause for a one-eighth
part whereof the rents, etc., should be paid " to my
nephew, Arundel Hopkins," etc., as before.

Arundel Hopkins died March 17th, 1873, unmarried.
John J. Hopkins died July 22nd, 1875, leaving a widow
and no children. By his will he devised the residue of
his estate to his wife for life, and remainder to his heirs
at law. J. M. Mercer died June 22nd, 1878. Ella W.
Mercer died April 12th, 1879, leaving four children,
to wit: Samuel H., George D., Mary and Margaret.
Mahlon Hopkins died August 26th, 1879, unmarried.
George D. Mercer died May 13th, 1887, leaving a
widow, his devisee, and no children. Samuel Mercer
died January 27, 1897, leaving a widow, his devisee and
no children. The Court below decreed:

(3) " That by the true construction of said will and codicils (and especially of that paragraph of said will above mentioned), upon the death of any one of the children of Samuel Hopkins named in said will (or the death of James Monroe Mercer, the husband of Ella W. Mercer, one of said children), *leaving* a child or children living at his or her death, the trustees were directed until the expiration of the period of twenty years after such death (in the case of James Monroe Mercer twenty years after the death of his wife, Ella W. Mercer), to apply such fraction of the net income from both the real and leasehold property so devised in trust as had been given for life to such child of Samuel Hopkins (or to James Monroe Mercer) so dying, to the education and maintenance of such [child's]—child or children during the period of twenty years after such death, the manner of so applying such income to education and maintenance being confided to the discretion of the trustees, and any income not necessary for such purpose to be accumulated. And in case any of such children [of a child of S. H.] should die during said period, then for the balance of said period to apply the proportion of net income from real estate which would have been applied to the education and maintenance of such decedent to the education and maintenance, in manner aforesaid, of those persons who at the time of such application answer to the description of his or her heirs at law, to be ascertained according to the laws of descent of this State; and the proportion of income from leasehold estate which would have been applied to the education and maintenance of such decedent, to the education and maintenance, in manner aforesaid, of those persons who, according to the laws of distribution of personalty of this State, would at the time of the application of such income be the distributees of such decedent. And that at the expiration of such period of twenty years, a legal estate in fee simple in a share of the real property so devised, in trust, proportional to the share of income given to the life tenant (child of S. H. or J. M. M.) so dying (together with any income there-

from accumulated as aforesaid) was to vest absolutely in the then surviving children of such life tenant and the issue of any then deceased leaving issue then surviving (such issue representing their parent) and the heirs at law (representing their ancestor) of any child or children of such life tenant who might have died during said period without leaving any issue surviving at the expiration of such period; (the words " heirs at law " being here used in this decree to signify those persons who would have been, according to the laws of descent of this State, the heirs at law of such decedent if he or she had then, just at the expiration of such period, died); and in like manner an absolute estate in a share of the leasehold property so devised in trust proportional to the share of income given to the life tenant so dying (together with any income therefrom accumulated as aforesaid) was to vest absolutely in the then surviving children of such life tenant, and the issue of any then deceased leaving issue then surviving (such issue representing their parent), and the distributees of any child or children of such life tenant, who might have died during said period without leaving any issue surviving at the expiration of such period; (the word " distributees " being here used in this decree to signify those persons who would have been, according to the laws of distribution of personalty of this State, the distributees of such decedent, if he or she had then, just at the expiration of said period, died; and such distributees representing such decedent).

And that in like manner by the true construction of said will and codicils, upon the death of any one of the children of Samuel Hopkins named in said will *without* leaving a child or children living at his or her death, the trustees were directed until the expiration of the period of twenty years after such death to apply such fraction of the net income from the real property so devised in trust, as had been given for life to the child of Samuel Hopkins so dying, to the *education and maintenance* of those persons who at the time of the application of such income answer to the description of his or

her heirs at law, to be ascertained according to the laws of descent of this State; and to apply the same fraction of the net income from the leasehold property so devised in trust to the education and maintenance of those persons who, according to the laws of distribution of personalty of this State, would at the time of the application of such income be the distributees of such decedent; the manner of so applying said fraction of the net income from the real and leasehold property to the education and maintenance of such heirs at law and distributees, whether adult or not, being confided to the discretion of the trustees, and any income not necessary for such purpose to be accumulated. And that at the expiration of the period of twenty years after the death of the life tenant so dying, a legal estate in fee simple in a share of the real property so devised in trust proportional to the share of income given to such life tenant (together with any income therefrom accumulated as aforesaid) was to vest absolutely in those persons who would then be the heirs at law of such decedent, ascertained according to the laws of descent of this State, but as if such decedent had then (just at the expiration of said period) died, such persons taking such proportions among themselves as are by the said laws of descent provided; and in like manner an absolute estate in a share of the leasehold property so devised in trust proportional to the share of income given to such life tenant (together with any income therefrom accumulated as aforesaid), was to vest absolutely in those persons who would then be the distributees of such decedent, ascertained according to the laws of distribution of personalty of this State, but as if such decedent had then (just at the expiration of said period) died, such persons taking such proportions among themselves as are by said laws of distribution provided."

Filed with the bill as an exhibit, was a deed of trust executed by Samuel Mercer, and the bill asked for its construction. On February 16th, 1884, Samuel, then unmarried, executed to Lavinia Hopkins and others, a deed of trust which was recorded. The deed recites

that he is indebted to one of the trustees and others, and is desirous of paying his debts, and conveyed all his property, real and personal, upon trust, to collect the income, etc., of the property to which he was then, or should thereafter, become entitled, and the deed provided that if the grantor should leave a widow and no children, the trustee should hold the property with the same powers, for the use and benefit of said widow during her life, and at her death for the use and benefit of the right heirs of Samuel. It being contended for Samuel's widow and devisee that the limitation for the use and benefit of the right heirs of Samuel, operated under the Rule in Shelley's case to give back the fee subject to the widow's life estate, to Samuel, it was held that the rule did not apply, and also that the interests in the shares of Arundel and John J. Hopkins, which came to Samuel after the date of his deed of trust, passed under said deed, and are now vested in the trustees.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE and PAGE, JJ.

*John V. L. Findlay* and *Thomas Mackenzie,* for Mrs. Eliz. W. Howard et al.

1st. Arundel Hopkins or his heirs and distributees took an absolute estate in one-eighth of the realty and personalty immediately upon the death of Johns Hopkins, and that, therefore, an absolute interest proportionately in said share of the realty and personalty was vested in John J. Hopkins, the brother of Arundel, as one of his heirs and distributees, in accordance with the terms of the will of Johns Hopkins, and which the said John J. Hopkins could and did dispose of by his will.

2d. John J. Hopkins took by virtue of the rule in Shelley's case, an absolute interest or estate to the extent of two-eighths in the realty, which would pass under his said will, or if the rule cannot be held to apply, then under the very terms of the will of Johns Hopkins, the said John J. Hopkins dying without children, the two-eighths interest in the leasehold held for him be-

came immediately vested in his distributees and his widow (now Mrs. Elizabeth W. Howard), took as one of said distributees a one-half interest in said leasehold property. And if the rule in Shelley's case applies, Mrs. Elizabeth W. Howard will take in addition, under the will of her former husband, a life interest in two-eighths of the realty.

*Thomas B. Mackall,* for Mrs. Jennie W. Mercer, widow and devisee of George D. Mercer.

George, as one of the children of Mrs. E. W. Mercer, was entitled to one-fourth of the Mercer four-eighths. The " heirs " and " distributees " are the persons who were the " heirs " and " distributees " of the several decedents *at the time of their respective deaths,* and not (as contended by the appellees) the persons who *would be* heirs and distributees of such decedent if such decedent had then died, just at the expiration of said period of twenty years after the death of a life tenant.

The terms next of kin and heirs have a direct reference to the death of the ancestor, and therefore next of kin and heirs are to be ascertained at the death of the ancestor, and where there is in addition a reference to the statute or to intestacy, the rule is almost without exception. The same rules apply to realty, personalty and to a mixed fund. *Theobald on Wills,* 263, 265. As to " heirs," 2 *Jarman on Wills,* 905, 931, 935. As to " next of kin," 2 *Jarman on Wills,* 981-983, etc., 990-993. *Hawkins on Wills,* 94-99, etc.; *Gundry* v. *Pinniger,* 1 De G. M. & G. 502; *Bullock* v. *Downes,* 9 H. L. C. 1; *Mortimore* v. *Mortimore,* 4 App. Cas. 448.

And if the gift is to the next of kin of a person who survives the testator, the class is ascertained at the death of that person. *Theobald on Wills,* 265; *Gundry* v. *Pinniger,* 1 De G. M. & G. 502; *Jacobs* v. *Jacobs,* 16 Beav. 557; *Markham* v. *Ivatt,* 20 Beav. 579.

*L. P. Hennighausen,* for Mrs. Marie H. Mercer, widow and devisee of Samuel H. Mercer.

The deed of trust did not deprive Samuel Mercer of

his right to dispose of his property by will. The deed recites that he " is about to leave this country and to take up his residence in Europe " and that " he is indebted " to one of the grantees and others, and manifestly, his two objects were: 1st, to create a mere agency for the management of his property during his residence abroad, and 2nd, an active trust for the benefit of his creditors; and it is conceded that all his debts were paid before he made his last will. He destroyed the remainder to his widow for life, by deliberately giving her by will, all his estate. He did not deprive himself of his power of testamentary disposition. It is irrational to presume that he meant to deprive himself of the free disposition of property he might at any time become entitled to by inheritance or otherwise. The disposition made by his will leaves no doubt as to his understanding of the meaning and import of his deed of trust. The deed provided for a remainder to the use and benefit of the right heirs of S. and, accordingly, S. took by that deed, under the Rule in Shelley's case (*Brown* v. *Renshaw*, 57 Md. 67), a fee simple estate, subject to the wife's life estate.

*Frederick J. Brown* (with whom was *Bernard Carter* on the brief), for the Johns Hopkins Hospital and Johns Hopkins University.

1st. In behalf of the hospital. The hospital is (and ever since testator's death has been) entitled—under the " fail to take effect " clause—to the Arundel one-eighth, Dr. Arundel Hopkins having died childless in the testator's lifetime—March 17th, 1873—and the disposition of one-eighth having thus failed to take effect.

(*a*) The lapsed legacy provision of the Code (Art. 93, sect. 313) cannot, in the nature of things, save Arundel's life interest from lapsing, or failing to take effect—cannot " transfer " it; and this, simply because all that A. was to have under the will was an equitable *life* interest (*his* life, and that was gone).

(*b*) The " if any " clause, properly understood, cannot save the Arundel one-eighth from going to the hospital

under the " fail to take effect " clause, because, after
March 17th, 1873, Arundel was not one of the " chil-
dren "—(" if any of the children ")—who *might possibly*
" die without leaving any child," etc.

We agree with appellants, of course, that *until* March
17th, 1873, the " children " of Samuel, the possibility of
whose dying " without leaving any child " was contem-
plated, included Arundel.   Until that date he was one
of a number of " children " who might, or might not,
*so* die.   But after that date—when he *had* died childless
—there was no chance about it.   It could not possibly be
said of him any longer that he was one of a class who
might die leaving a child in whom a share should vest
after the his-life-plus-20-years period.

As to the Arundel one-eighth, the two principal
things contemplated by the testator were, *first*, the liv-
ing of Arundel (or of some child of his) to help to fill
up the Arundel-life-plus-20-years period, and *secondly*,
the *vesting* of that property at the end of such period in
his *children*, and both these things had become utterly
out of the question.   During the last nine months of
testator's life, he must be taken to have said (" speaking
from day to day until he died," *Dalrymple* v. *Gamble*, 68
Md. 523): " My will speaks of ' children ' of my brother
who may or may not help, as stop-gaps or as burning
candles, to fill out certain periods; down to March 17th,
1873, Arundel was one of those ' children '; but since
his death, childless—as he cannot help, as a stop-gap or
as a burning candle, to fill out the period—the class
' children ' there of course no longer includes him."

When testator wrote the word " children " there, he
wrote it subject to a meaning which would fluctuate and
exclude individuals as the events might happen.   The
event—death of a childless nephew—did happen (in
March, 1873), and the meaning then changed (as it was
bound to do) so as to exclude him.   He was no longer
of the " children."   Any interpretation put upon the
" if any " clause to save the Arundel one-eighth from
going to the hospital must be an interpretation which
will both fit the facts and the testator's *meaning after*

*Arundel's death,* and also fit the case of the *living*
nephews, and no such interpretation has been or can be
supplied.

Counsel for the different appellees have tried several
times to construct such an interpretation, but their at-
tempts to reconcile the irreconcilable, to harmonize in
one statement and construction the opposite poles of
life and death, have *necessarily* failed.

2nd.   In behalf of the hospital and university as resi-
duary devisees of three-eighths (the John J. two-eighths
and the Mahlon one-eighth).   These three-eighths do
not fall under the " fail to take effect " clause, for they
took effect, beyond all doubt; but the question is, for
how long?   We say, for the life-plus-20-years periods,
and no longer, and that the undevised remainder in the
John two-eighths vested in the hospital and university
on July 22nd, 1895, and that the undevised remainder in
the Mahlon one-eighth will so vest on August 26th,
1899.

The John two-eighths clause (and the same is true of
the Mahlon one-eighth clause) did not, *by itself* and un-
assisted by the " if any " clause, provide for a vesting in
any one except his " child or children " or descendants.
To make his share vest in any one else, the " if any "
clause has to be invoked, and that clause, while it pro-
vided that during the life-plus-20-years periods the prop-
erty (John's share for instance) should " be held " for a
shifting lot of *cestuis que trust,* carefully provided that
this holding should be " subject, however, in all respects
to the other limitations appointed . . . in reference to
the shares," etc., and the only limitation which had been
appointed was the vesting in child, children, or descend-
ants.   There being no child or descendant of John or
Mahlon for their shares to vest in, these go to the resi-
duary devisees.

We say that the objections to appellees' theory are:

1st.   That it ignores this reference (" subject how-
ever ") back to the " other limitations " set forth in the
previous John clause (for instance), the *only* limitation
there being to child or descendant.

2nd. It makes two very different expressions bear
one and the same meaning, for their theory is that the
John two-eighths share shall vest preferably in his chil-
dren if there are any at the end of the life-plus-20-years
period, and this it is to do by virtue of the words ".shall
vest absolutely in " (in the John clause), but if there are
no children, it is to vest in heirs and distributees, and
this it is to do by virtue of the words " shall be held in
trust for " (in the " if any " clause).

3rd. It makes one and the same expression—" shall
be held in trust for "—bear two different meanings.
For 20 years this phrase means that a legal estate (in
the John two-eighths, say) should be held by the trustees
in trust for two more or less shifting lots of people (who
are *mere cestuis que trust*, and *as such* are entitled merely
to income of realty and leasehold) when suddenly, on
July 22nd, 1875, this protean phrase ceases to mean
what it had meant, and all at once means (what it did
not mean before) " shall vest absolutely in " the lucky
survivors of those shifting groups. We admit, of course,
that the words " the share shall be held by my trustees
in trust for " would, of themselves, easily bear the mean-
ing of carrying the fee, but they do not stand by them-
selves; in the same breath the testator refers back to
" the other limitations " in the John (for instance)
clause, which are that the share shall at the end of the
prescribed period vest in John's children or descendants.

4th. It makes the word " heirs " (also the word " dis-
tributees ") bear *different meanings.* Let us take John's
case. Who were, *really*, when he died (July 22nd, 1875)
his heirs and who his distributees? Why his brother
and sister—and no other persons—were his heirs, and
his wife, his mother, brother and sister—and no other
persons—were his distributees. But Johns Hopkins'
will, when it provides that until July 22nd, 1895, a shift-
ing lot of persons, a *sort* of " heirs " and " distributees,"
shall be the *cestuis que trust* of the John two-eighths,
does not mean John's *real* heirs and distributees, accur-
ately so-called. " Heirs " (or " distributees ") is a mere
convenient but inaccurate *nomen collectivum,* meaning

for income-receiving-purposes " heirs " and " distributees," " heirs " and " distributees " *in quotation marks.* Not one of John's 1875 heirs was an " heir " in 1895, and only one of his 1875 distributees was a " distributee " in 1895. According to appellees' theory, the *strict* 1875 meaning of heirs or distributees (of John) is to be revived (after 20 years of abeyance and of meaning something else) for the benefit of the 1895 individuals who have been hitherto only *cestuis que trust,* recipients of income.

We give, on the contrary, but *one* meaning to " heirs," and but *one* to " distributees," as used in this clause by testator. We say that they are mere *nomina collectiva,* to describe fluctuating classes of *cestuis que trust,* who never became anything else. We say that the words " shall be held in trust for " begin with having a certain meaning; they declare and define the actual relation of trustees and *cestuis que trust;* having begun with *that* meaning, they never *change* to or *acquire* any *other* meaning, and because they cannot acquire the *other* meaning, " shall vest in," there *is no vesting,* and the remainders go as undevised residues to our clients.

*William A. Fisher* and *Samuel D. Schmucker* (with whom were *Richard M. Venable* and *Geo. Whitelock* on the brief), for the trustees and others, appellees.

I. The words " heirs " and " distributees," in limiting the remainders on default of issue to the children of Samuel Hopkins, are used in the will in a descriptive rather than a technical sense; but if their technical meaning is to be ascribed to them the result is the same. Where there is an executory devise or a contingent remainder to one and his heirs, and he dies before the contingency happens, it devolves upon his heirs, and so from heir to heir, until the contingency happens upon which the estate vests, when it vests absolutely in him only *who can then make himself heir* to the first devisee. In such cases it does not vest absolutely in the first heir so as upon his death to carry it to his heir at law, who is not the heir at law of the first devisee, but it devolves

from heir to heir and vests absolutely in him only who can make himself heir to the first devisee at the time when the devise falls into possession. *Barnitz's Lessee* v. *Casey*, 7 Cranch 456; *Buck* v. *Lantz*, 49 Md. 439.

2. The death of Arundel did not defeat the estates in remainder and create an intestacy. Its effect was merely to accelerate the estates in remainder. 1 *Jarman on Wills* 536; *Jull* v. *Jacobs*, L. R. 3 Ch. Div. 709; *Elmsley* v. *Young*, 2 M. & K. 780; *Randall* v. *Randall*, 85 Md. 430, and other authorities.

3. The overshadowing and controlling purpose of the testator was *not to give* to *hospital or university* the property now under discussion, but to devote it to the benefit of the children and descendants (or their heirs) of his brother Samuel. Any construction which would transfer this property to the hospital or university (which received the lion's share of the estate) would defeat the main purpose of the testator in reference to it. (Appellees' argument with reference to the deed of trust is omitted.)

Fowler, J., delivered the opinion of the Court.

This appeal brings before us for construction several clauses of the will of the late Johns Hopkins of Baltimore City.

Neither the validity of the will nor of any part of it is assailed. But it is alleged that doubts have been suggested as to its true construction in so far as it relates to that portion of the testator's estate devised to the trustees in trust for James Monroe Mercer, and the children of Samuel Hopkins, a deceased brother of the testator, and their issue.

The testator devised to the trustees valuable property in the city of Baltimore in the following terms: " In trust nevertheless for the children . of my deceased brother, Samuel Hopkins,. and for the benefit of James Monroe Mercer, the husband of my niece, Ella W. Mercer, in manner and form following, that is to say, In trust to collect the rents, issues and profits thereof, and to apply the same in the first place to the payment

of all charges and taxes upon or repairs of the said property, or any of it, and afterwards to pay semi-annually three-eighths parts of the clear rents," etc., " thereof to my niece, Ella W. Mercer . . . for the period of her natural life, and after the death of the said Ella W. Mercer, to apply so much of the three-eighths parts of the clear rents," etc., " as may be necessary to the education and reasonable maintenance of any child or children of the said Ella W. Mercer, who may be living at her death until the expiration of the period of twenty years after the death of the said Ella W. Mercer, at which period of time three-eighths parts of the property so devised in trust, for the children of my said deceased brother Samuel Hopkins, and for James Monroe Mercer, together with any surplus of income or property proportionably arising therefrom, shall vest absolutely in the child or children of the said Ella W. Mercer as tenants in common—if there be more than one child the issue of deceased children taking by substitution as tenants in common the respective shares which their respective parents would have taken."   A similar provision, except as to amount, is made by the testator for each of the three sons and their children; and for James M. Mercer, the husband of Ella W. Mercer, who was a child of Samuel Hopkins, a like provision was made with the additional exception that from the death of said Mercer the trustees are to hold the share of the estate devised for his own use until the expiration of twenty years after the death of his wife, when it is to vest as provided in respect to the other shares.

In a later part of the will provision is thus made for the contingency of any child or children of Samuel Hopkins dying without leaving any child or children and for other contingencies.

" If any of the children of my deceased brother, Samuel Hopkins . . . should die without leaving any child, or children, or if any child, or children, of any one of the children of my said deceased brother . . . shall depart this life after the death of his, her, or their parent (such parent being a child of my said deceased

brother . . .), *and before the expiration of the period of twenty years after the death of his, her, or their parent* (such parent being as aforesaid, a child of my said deceased brother . . .), then, and in such event, it is my will that the share, part or interest of the child, or children, of my said deceased brother, . . . so dying, and of the grandchild, or grandchildren, of my said . . . brother . . . so dying, shall be held by my said trustees and by the survivors of them, in trust, as to the realty, for the heirs at law of such deceased child, or grandchild, or children, or grandchildren of my said brother . . . and in trust, as to the personalty, for such person, or persons, as under the laws of this State would be entitled to be the distributees of the personal estate of such deceased child, or grandchild, children, or grandchildren, subject, however, in all respects, to the other limitations appointed by this, my last will and testament, in reference to the shares of the children of my said deceased brother, . . . in so far as such limitations are applicable."

The three sons of Samuel Hopkins died leaving no issue. Arundel died in the lifetime of the testator, March 17th, 1873; John J. on July 22nd, 1875; and Mahlon on the 26th of August, 1879. Samuel Hopkins' only daughter, Ella W. Mercer, died April 12th, 1879, and her husband, James M. Mercer, June 22nd, 1878. Four children survived them, namely, George D., Samuel E., and Mary M., who is the wife of Charles H. Harding, and Margaret W., who is the wife of Salo Shapiro. George D. and Samuel H. Mercer both died without leaving issue, the former May 15th, 1887, and the latter January 27th, 1897, but the two daughters, Mrs. Shapiro and Mrs. Harding, are both living, and are the only surviving grandchildren of Samuel Hopkins. They with their husbands were defendants below and are appellees in this Court. Mrs. Shapiro has two children—both infants, who are also defendants in this suit. At the time of filing the bill of complaint twenty years had elapsed since the death of Arundel and John J. Hopkins, two of the children of Samuel.

It must be also stated that Mahlon and John J. Hopkins, and George D. and Samuel H. Mercer each left a will; Samuel H. Mercer also made a deed of trust. The bill asks that the Court shall also declare what, if any effect, these wills and the deed of trust had upon the property in question or any part of it.

The Court below, after hearing the testimony and arguments of counsel, adopted by its decree the construction of the clauses we are to consider, set forth in the bill, and so ably supported in their argument before this Court by counsel representing the appellees. From this decree four separate appeals have been taken—that of Mrs. William T. Howard, the widow of John J. Hopkins; Mrs. Jennie M. Mercer, the widow of George D. Mercer and executrix under his will; the Johns Hopkins Hospital claiming as residuary devisee and legatee, and Mrs. Henrietta Mercer, the widow of Samuel M. Mercer and as devisee under his will.

While it might be interesting and perhaps instructive to consider the several, and to a large extent, conflicting views or theories of the appellants, perhaps both brevity and clearness will be promoted if we proceed at once to the consideration of the controlling questions presented by these appeals.

In the first place, then, it would seem to be too clear for controversy that in the several clauses of his will providing for the children of his brother, Samuel Hopkins, the testator intended to devise and did devise to each of such children an equitable life estate, during the continuance of which the legal title was vested in the trustees whose duty it was to pay the net income of his or her share to each of the beneficiaries.

Some of the appellants earnestly contend that under the *Rule in Shelley's case* this life estate becomes an absolute estate, and some of them deny this proposition with quite as much earnestness. We may as well dispose of this question here. It is well settled that in order to coalesce and form one absolute estate under this rule, the two estates must be of the same quality—both must be equitable or both legal. *Ware* v. *Richardson,*

3 Md. 505; *Handy* v. *McKim*, 64 Md. 569.   In order to make this rule apply to the devises under consideration, it would be necessary to cast aside the express language used by the testator by which he declared that the legal estate should be held by the trustees in trust for the life tenant, and from the expiration of the equitable life tenancy in trust for the period of twenty years, when the estate was to vest absolutely in the children or descendants of such life tenant, if any, and in default of any such issue living at that time, then in the persons who should answer to the description of heirs at law of such life tenant.   Here we have the equitable life estate, and a subsequent fee simple or absolute estate.   Under such circumstances it is settled the Rule in Shelley's case cannot be invoked.

Assuming, then, that there is an equitable life estate given to Samuel Hopkins' children, what is the next succeeding estate created by the will?   The will provides that after the death of the equitable life tenant, the trustee shall hold the estate in trust to apply so much of the income . . . as may be necessary to the education and maintenance . . . of any child or children of such life tenant who may be living at the death of such life tenant until the expiration of twenty years after the death of such tenant.   At the end of this period of twenty years after the death of the life tenant, the trust as to his or her share of the trust estate ceases, and the share, together with any surplus of income or property proportionably arising therefrom, vests absolutely in the child or children of such life tenant, as tenants in common. So far there would seem to be little room to raise a question as to the meaning of the language of the will apart from its application to the share of Arundel who died during the life of the testator, and apart from what is called in the bill the elliptical and obscure language by which the testator subjected or attempted to subject the devises made in case any of Samuel Hopkins' children should die without leaving any child or children, to the other limitations which he had made in case any of them should die leaving a child or children, in so far as the

limitations made in respect to the latter contingency are applicable to the former. In the clause just referred to applying to the case of a child of Samuel Hopkins dying without child or children, it is provided that if any of the above mentioned children of Samuel Hopkins should die without leaving child or children, or if any child or children of the said children of Samuel Hopkins should die after the death of his, her or their parents, and before the expiration of twenty years after the death of such parent, that then and in such event the share of such descendant shall be held by the trustees in trust as to the realty for the heirs at law of such descendant, and as to the personalty for his distributees.

The learned counsel who so ably presented the appeal of Mrs. Howard conceded that up to this point the will was free from ambiguity, and they contended, as do some of the other appellants, that the heirs and distributees who are to take in default of child or grandchild *surviving within the twenty year period,* are to take the estate absolutely, upon such default, without waiting for the expiration of such twenty year period. To this view we cannot assent. For, however obscure the so-called elliptical clause may be, it is evident that the testator intended to make the estate devised to the heirs and distributees subject to the same limitations which are provided for the estates devised to the children and grandchildren of his brother Samuel, so far as they are applicable. The two marked limitations appointed in reference to the latter are first, the twenty year period, and second, the absolute vesting of the estate at the *end* of that period. How, then, can we, in the face of this express direction of the testator, say that he intended the "heirs" and "distributees" to take an absolute estate *during* and *before the end* of the twenty years? The provision as to the time of vesting is as applicable in the one case as in the other—and it follows therefore that the estate given to the heirs and distributees must vest, not during the twenty year period, but at the end thereof. It also necessarily follows that only those can take who at *that time* answer to the description of the

class that is then to take. But this conclusion is sustained by authority, as well as by the necessary construction of the clause itself. In the case of *Demill* v. *Reed*, 71 Md. 187, it was held that where an estate is given upon a contingency to persons described as a class, only those can take who answer to the description at the time when the estate is to come into possession. " It seems to us," said MILLER, J., delivering the opinion in the case just cited, " to be clear law, as well as good sense, that in a case like this, where there is an ultimate limitation upon a contingency to a class of persons plainly described and there are persons answering to the description *in esse* when the contingency happens, they *alone* can take." It may be that the persons who enjoy the income under the terms of the will, as we have construed it, have been and will be a fluctuating body. These changes and fluctuations have been pointed out in the exhaustive brief by counsel for the hospital, but these results and others which have been suggested with much ingenuity by the same counsel are not sufficient to convince us that the testator did not fully mean what he said, namely, that the two limitations, the twenty year period and the absolute vesting at the end thereof, should apply to heirs and distributees. Nor does the fact that under the construction we have adopted some of the persons who would enjoy the income might be too far advanced in life to be " educated and reasonably maintained " in the ordinary meaning of those terms. If the income were not needed for these or either of these purposes in the case of any heir or distributee who in the ordinary meaning of the word is already " educated," or if maintenance was not necessary, it would accumulate in the hands of the trustee until the time when the trust estate is to vest, that is at the end of the twenty year period. In other words the direction to devote income to education and maintenance would not be applicable and need not, therefore, be applied in the case supposed. For an application of the rule which determines who takes the absolute estate in cases like this, see *Buck* v. *Lantz*, 49 Md. 439; *Barnitz* v. *Casey*, 7 Cranch 456.

2. It was contended on the part of Marie Henrietta Mercer that her husband Samuel H. Mercer took an absolute estate under his deed of trust to Lavinia Hopkins by the operation of the Rule in Shelley's case. But we think, for the same reason and upon the same authority (*Ware* v. *Richardson, supra*), that we held the rule did not apply to the estates devised by the will of Johns Hopkins to the children of his brother, Samuel Hopkins, it is not applicable here; the two estates are not of the same quality, one being equitable and the other legal. It will appear from an examination of the case of *Brown* v. *Renshaw*, 57 Md. 67, relied on by the appellant, that it is distinguishable from the case of *Ware* v. *Richardson*, , and from the case now before us. Without prolonging this opinion by a discussion of the fruitful subject of the Rule in Shelley's case, we are of opinion that the deed of trust under consideration from Mercer to Lavinia Hopkins, which empowered the trustee to collect and receive the income of the trust estate and to pay it over to the life tenant (Mercer) with remainder to his right heirs, contains every essential feature of the deed construed in *Ware* v. *Richardson*, and must therefore be governed by the opinion in that case. This being so, the first taker here, as in the deed in *Ware* v. *Richardson*, took an equitable life estate, and the heirs a legal estate—thus making it impossible to apply the rule. Nor can we adopt the view that Samuel Mercer took under this deed by way of resulting trust—for, as we have said under its provisions, an estate in fee vested in his right heirs.

3. It will be remembered that wills were made by John J. Hopkins and Mahlon Hopkins. But it is evident that, as they took only equitable life estates, no interest in the trust estate passed by these wills. Lavinia Hopkins claimed only as devisee under them, and, therefore, her will can have no effect upon said trust estates under Johns Hopkins' will. Nor did the will of George D. Mercer affect it in any way, because he died in 1887 before the expiration of twenty years after the death of any child of Samuel Hopkins, before which

period we have said he could not have had a vested or devisable estate.

4. It only remains to discuss briefly the claim of the Johns Hopkins Hospital, based upon the contention that the devise of the share of the trust estate created by the will of Johns Hopkins to Arundel, one of the children of Samuel Hopkins failed to take effect or lapsed because the devisee, Arundel, died without child or children before the death of the testator.

There is a general provision in the will that in case any devise or legacy shall fail to take effect, the property therein mentioned shall go to the Johns Hopkins Hospital, but the testator also made provision for the case of any devisee or legatee who should dispute the validity of his will, declaring that " all dispositions . . . in favor of such person or persons shall cease and be void," and that such forfeited devises shall go to the hospital for its corporate uses.

There is also a general residuary clause in the first codicil in favor of the hospital and the university. It is upon the " fail to take effect clause," applied to the fact of Arundel's death without child or children during the lifetime of the testator that the hospital bases its claim to one-eighth of the trust estate.

It is to be observed that Arundel's estate was only a life estate, and, therefore, so far as his interest is concerned, it matters not whether he died before or after the death of the testator. If, as is the fact, he died before the testator, his life estate never commenced, the will taking effect only from and after the testator's death. Therefore, inasmuch as Arundel took nothing under the will, neither the hospital nor the university can take any thing through or from him. Nor do we understand that such is the claim; but the contention is that because Arundel died during the life of the testator without child, etc., the devise over contained in the will, providing for the case of any child of Samuel Hopkins so dying does not apply to Arundel. It must be conceded, of course, that the provision of the Code, Art. 93, sec. 313, relating to lapsed legacies, has no applica-

tion to this question, because Arundel's estate being for
life only, necessarily ended at his death, and cannot,
therefore, be transferred by operation of the statute.
But we think it is equally clear that the true construc-
tion of this provision of the will relating to a child of
Samuel Hopkins dying without child, etc., requires us
to decide this question against the view so earnestly
and forcibly presented on the part of the two corpora-
tions founded by the testator. Indeed, it must follow,
if the conclusion we have reached in the former part of
this opinion be correct, that the claims of these corpora-
tions cannot be maintained, for we have said that the
share of a child of Samuel Hopkins dying without child,
etc., must, according to the true construction of the will,
go to the heirs and distributees of such child. It was
urged, however, that after Arundel's death, the testator
living, it was impossible, properly, to speak of Arundel
as one of the children of Samuel who *might* die without
leaving a child, because that contingency had already
happened before the will began to speak, and that there-
fore the language of the testator has no application to
the share devised to Arundel and then over. But while
it is true Arundel was dead when the will took effect,
he was living and was one of the children of Samuel
who might die without child or children when the will
was written and executed. In other words, the will
speaks as of the time and must be construed according
to the situation of the parties and the circumstances
existing when it was written, although it does not take
effect until the death of the testator. Now when the
will was executed Arundel was living, and, of course,
the provision under consideration *then* applied, and was
intended by the testator to apply to him as to all the
other children of Samuel. However, while Arundel
took nothing under the will, and left no child or chil-
dren who could take, why should not his heirs and dis-
tributees take under the clause providing for them in
default of Arundel dying without issue? The estate de-
vised to them in remainder, as we have construed the
will, was separate from and independent of the equitable

life estate devised to Arundel, and therefore the failure
of the latter to take effect cannot destroy the devise of
the former.    There was no time when the whole estate
was not vested either in the testator, or in the trustees
and the *cestuis que trustent.*    After Arundel's death, the
testator until his own death held both the legal and equi-
table titles.    After his death the legal estate vested in
the trustees, and the equitable title in the heirs and dis-
tributees of Arundel.    So that there does not appear
to be any occasion for the application either of the gen-
eral law of lapsed legacies and devises or of the special
provisions of the will for the case of a devise, etc., failing
to take effect.    The only effect the death of Arundel
can have upon the estates in remainder devised and be-
queathed to his heirs and distributees is to hasten the
time when they are, under the true construction of the
will, entitled to the possession of and enjoy the estate
itself.    In a word, we have here an illustration of what
is called the acceleration of estates in remainder.    1
*Jarman on Wills* 536; *Jull* v. *Jacobs,* L. R. 3 Ch. Div.
709; *Emory* v. *Young,* 2 M. & K. 780; *Randall* v. *Randall,*
85 Md. 430; 20 *Am. & Eng. Ency.* 938.

But again, it seems to us that this contention ignores
the necessary result and effect of the second codicil,
which was executed nearly a year after the death of
Arundel.    What was the effect of this codicil on the
devises and legacies to the children of his brother
Samuel?    We must, as was urged by counsel for the
hospital, assume that the testator knew his nephew
Arundel was dead when the second codicil was executed.
If so, the testator deliberately, and doubtless with this
knowledge of his nephew's death, advisedly confirmed
his will.    He then and there substantially declared: " I
know that my nephew Arundel died without issue, but
I confirm my will.    It is true neither he nor any child
of his can take anything under my will, but his heirs
and distributees will get what I intended for him and
his children, and after all, those who will get Arundel's
share are the very persons I have been so careful to
provide for, namely the children and grandchildren of
my brother Samuel or their heirs and distributees."

What we have said disposes of the controlling questions presented by these four appeals now before us. It follows, without further discussion of the many questions presented and numerous authorities cited, that the decree appealed from must be affirmed, and that the several estates and interest are vested in the parties to this suit as particularly set forth in the several provisions of that decree.

The cause will be remanded in order that accounts may be stated and proceedings had in accordance with the views expressed in this opinion.

> *Decree, affirmed and cause remanded,*
> *costs in this Court and in the Court*
> *below to be paid by the trustees out*
> *of the trust estate.*

(Decided June 30th, 1898.)