# ANNA B. SUTTON *v.* SAFE DEPOSIT AND TRUST COMPANY.

[No. 28, April Term, 1928.]

484

*Decided July 16th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*G. Ridgely Sappington,* for the appellant.

*Charles McHenry Howard,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

This is an appeal of Anna B. Sutton from a decree of the Circuit Court of Baltimore City construing so much of the will of Walter B. McAtee, deceased, as concerns that portion of the decedent's estate as had been held in trust for Walter B. McAtee, Jr., by the Safe Deposit and Trust Company of Baltimore. The single question submitted is on a special case stated for the determination of the court under Code, article 16, section 221. (General Equity Rule No. 45.)

It appears that Walter B. McAtee died August 4th, 1898, leaving a will executed April 19th, 1892, which was pro-bated in the Orphans' Court of Baltimore, by which the Safe Deposit and Trust Company of Baltimore was made execu-tor and trustee of the whole estate. The entire estate was distributed to the appellee as trustee under the will and a division of the trust estate made by the trustee in accordance with the will, whereby one-fourth was set apart and allotted to be held in trust for the testator's son, Walter B. McAtee, Jr. Of the remaining three-fourths, one share or one-fourth of the entire estate was distributed to Walter B. McAtee, Jr., absolutely, and the remaining two quarter shares were allotted to be held in trust by the appellee for the appellant and are still so held. The appellant, Anna B. Sutton, daugh-ter of Walter B. McAtee, is a widow, has no children or descendants, and was sixty-three years of age on March 4th, 1928.

Because of the death of Walter B. McAtee, Jr., on the 21st day of October, 1927, intestate, unmarried, and without issue, the question has now arisen and is submitted as to what disposition shall be made by the trustee of the one-fourth share or portion so held in trust for him during his lifetime under the will of his father. The plaintiff, or appellant, contends that, according to the true construction of the will, that share has now become distributable and should be paid over to her free of any further trust. The trustee contends that the share of Walter B. McAtee, Jr., according to the true construction of the will, should now be added to the two quarter shares of the entire estate which it now holds under the will for life, in such manner that the same shall become an addition to the shares already held for the appellant, and be subject to the same limitations upon which such other shares are now held under the terms of the will.

The case stated asks the court "to construe the terms and provisions of said will with respect to the share so held in trust thereunder for said testator's son up to his death; and to determine and decide what disposition should now be made of said trust estate and property constituting said share by the defendant as trustee thereof."

The chancellor decreed that the trustee (appellee) shall add the one-fourth share heretofore held in trust for Walter B. McAtee, Jr., to the one-half share already held in trust for the appellant, the three-fourths to be hereafter held and administered as a single trust, and, after the death of the appellant, to be held in trust as provided by the will of Walter B. McAtee, subject to the right of the appellant to dispose of two-fifths of the entire corpus of the trust estate, as merged, by will, and from this decree the appeal is taken.

The will of Walter B. McAtee, which was regularly signed and witnessed, contains the following provisions, the quotation of which is necessary to an understanding of the question submitted:

"1. I do give and devise to the Safe Deposit and Trust Company of Baltimore and its successors, all

my estate of every kind and description, of which I shall be seized and possessed at the time of my death, In trust to divide the same in four equal parts, with full power to said trustee to sell, convey and assign any part of said estate in order to make said division or for the purpose of executing the trusts created by this will.

"2. And one of said equal fourth parts said trustee shall, upon the completion of said division of my estate, convey and assign absolutely to my son, Walter B. McAtee, his heirs, personal representatives and assigns.

"And the remaining three-fourths of my estate said trustee shall hold upon the following conditions and trusts, namely:

"3. It is my will and I so direct, that said trustee shall hold two of said fourth parts of my estate for the sole and separate use of my daughter, Anna Boyd Sutton, the wife of Eben Sutton, of Boston, Massachusetts, and to pay the income thereof to my said daughter during her life, and after the death of my said daughter to apply so much of the said daughter's share of my estate as remains vested in said trustee as may be necessary for the education and maintenance of any child, children or children of a deceased child of my said daughter, who may be living at her death, until the expiration of twenty years after the death of my said daughter, at which period the said share of my estate so devised in trust for the use of my daughter during her life, or so much thereof as may remain vested in said trustee and not disposed of by the last will of my said daughter, together with any income accrued thereon, shall vest absolutely in the child, children, or children of a deceased child of my said daughter, the issue of deceased children of my said daughter to take by substitution the share which their respective parents would have taken.

"It is my will and I so direct that my said daughter shall have full power and authority to dispose of two-fifths of her share of my estate by last will and testament as fully as if she were a *feme sole*.

"4. The remaining fourth part of my estate said trustee shall hold in trust to pay the income thereof to my said son, Walter B. McAtee during his life, and after his death to apply so much of the same and the income thereof as may be necessary to and for the education and reasonable maintenance of any child, children or child of a deceased child of my said son who may be living, at his death, until the expiration of twenty years after the death of my said son, at which period the said share of my son, together with any income thereon accrued and unexpended, shall vest absolutely in the child, children and children of a deceased child of my son—the issue of deceased children taking by substitution the respective share or shares which their respective parents would have taken.

"5. If either of my said children should die without leaving any child or children, or if any child or children of my said children shall die leaving no children surviving them, before the expiration of the period fixed for the termination of this trust and all the trusts created by this will, that is to say, within twenty years after the death of the survivor of my children, it is my will that the share, part or interest of my said son and the share of my said daughter so dying without children, and the share or shares of the child or children of my said children so dying during the continuance of these trusts, shall be held by said trustee and its successors in trust as to the realty for their respective heirs, and as to the personalty for such person or persons as under the laws of Maryland would be entitled to be the distributees of such deceased son or daughter or of such deceased child or children of such deceased son or daughter.

"Subject, however, in all respects, to the provisions and limitations made by this my will in reference to the other trusts hereby created, my intention being that all of the trusts created by this will shall terminate upon the end of twenty years after the death of the survivor of my said children."

Ordinarily, in cases involving the construction of wills, the decisions are not as helpful as in some other branches of the law, and it was this which inspired the observation in *Hutton v. Safe Dep. & Trust Co.*, 150 Md. 539, 554, that "the intent of the testator is the law of wills unless it conflicts with some settled rule of law or of property." *Miller on Construction of Wills,* section 16. The province of the court in a case like this was outlined by Judge Digges in *West v. Sellmayer,* 150 Md. 478, wherein he said: "The task before this court is to ascertain from the language used and in the light of the surrounding circumstances at the time of the making of the will, what was the intention of the testator as to the disposition of the property, and if such intention can be definitely ascertained, to give full effect to it unless it contravenes some positive and well settled rule of law or of property. In performing this duty we have no power to ascribe to the testator a particular intention because under the circumstances we may have a conception of what the testator should have intended. To do otherwise would be, not to construe the will of the testator, but to make his will for him upon the basis of what we think should have been his intentions and give effect to it as thus construed. While a will takes effect from the date of the death of the testator, in construing it to arrive at the testator's intention, it must be interpreted as of the date of its execution and in the light of the circumstances then surrounding and known to the testator." See *Miller on Construction of Wills,* section 9 *et seq.*

It has been said that "no will has a twin brother" (*Stahl v. Emery,* 147 Md. 123, 128, quoting *In re King,* 200 N. Y. 192), but this case seems to be an exception, because there is no question here which does not seem to have been presented and decided in the case of *Mercer v. Hopkins,* 88 Md. 292, involving the construction of several clauses of the will of the late Johns Hopkins. The provisions of that will are so like those of the McAtee will as to lead one to suspect that both wills were written by the same person, or that the one who wrote the McAtee will had the Hopkins will before

490

him when writing the former. This court, in that case, at page 307, quoted from that part of the Hopkins will making provision for the contingency that if any child or children of Samuel Hopkins, brother of Johns Hopkins, died without leaving child or children and "for other contingencies," as follows:

"If any of the children of my deceased brother, Samuel Hopkins, should die without leaving any child or children, or if any child or children of any one of the children of my said deceased brother * * * shall depart this life after the death of his, her or their parent (such parent being a child of my said deceased brother * * *), *and before the expiration of the period of twenty years after the death of his, her or their parent* (such parent being as aforesaid, a child of my said deceased brother * * *) then, and in such event, it is my will that the share, part or interest of the child or children of my said deceased brother so dying and of the grandchild or grandchildren of my said * * * brother so dying shall be held by my said trustees and by the survivors of them in trust as to the realty for the heirs at law of such deceased child or grandchild or children or grandchildren of my said brother * * * and in trust as to the personalty for such person or persons as under the laws of this state would be entitled to be the distributees of the personal estate of such deceased child or grandchild, children or grandchildren; subject, however, in all respects, to the other limitations appointed by this my last will and testament, in reference to the shares of the children of my said deceased brother * * * in so far as such limitations are applicable."

The appellant contends that it was the intention of the testator to leave his entire estate first to his children and then to his grandchildren, with the provision that both principal and income could be used for the "education and reasonable maintenance" of any child or grandchild of his son or daughter who may be living at his or her death, and because it shows any lack of intention to preserve the corpus for the benefit of any one beyond his children and grandchildren. Unfortunately for this contention, the will provided for a

limitation over of the trust in favor of the heirs or distributees of child or grandchild dying without issue for the period of twenty years after the death of the survivor of his children, and while the testator may have expected, when he executed his will, to have grandchildren (his daughter having been twenty-seven years old when the will was written, the age of the son not appearing in the record), he has provided for such a contingency as we now find, and the will under such conditions expressly continues the trust for twenty years after the death of the surviving child, now the appellant, for her and her brother's heirs, subject to the same limitations as the estates devised to the children and grandchildren. Of exactly this situation in the case of *Mercer v. Hopkins,* 88 Md. 292, 311, this court said: "However obscure the so-called elliptical clause may be, it is evident that the testator intended to make the estate devised to the heirs and distributees subject to the same limitations which are provided for the estates devised to the children and grandchildren of his brother, Samuel, so far as they are applicable. The two marked limitations appointed in refference to the latter are, first, the twenty year period, and, second, the absolute vesting of the estate at the end of that period."

From what we have said, it therefore appears that the share of Walter B. McAtee shall be held in trust by the appellee for the use of the appellant as his heir and next of kin, in the manner and for the purposes provided for in the will, and so held for the term of twenty years after the appellant's death for the heirs of Walter B. McAtee, Jr., unless sooner exhausted, in accordance with the terms of the father's will.

The appellant also contends that the brother's share of the trust estate, which might have survived to his children, if he had had any, does not survive to his heirs, and therefore the sister, as heir and distributee, would take the corpus of her brother's share. On the authority of *Hopkins v. Mercer, supra,* and *Marshall v. Safe Deposit and Trust Company,* 101 Md. 1, 10, we cannot agree with this contention, "be-

cause," as said in the latter case, "the will of Johns Hopkins there (*Mercer v. Hopkins*) under consideration contained a provision subjecting the devises over to the same limitations as were applicable to the original shares. This was regarded as sufficient evidence of an intention that successive limita-tions of accruing shares were contemplated and designed by the testator."

So far we agree with the decree of the chancellor, but with so much of the decree as declares that the two-fourths share of the whole estate of the father heretofore held for the appellant shall be combined with the one-fourth share of the deceased brother and hereafter administered as a single trust, with the right of the appellant to dispose by will of two-fifths of her brother's one-fourth, we disagree. What rights the appellant has in the brother's share she has as his heir and next of kin. It is merely a coincidence that his heirs and hers eventually will be the same persons. She inherits from him because he died without issue. If he had had children they would have been entitled under the will to so much of the corpus of his trust estate "and the income thereof as" might have been "necessary for the education and reasonable maintenance" of his children or grandchil-dren, and anything remaining of the trust estate at the end of twenty years after the death of the survivor (the appel-lant) would then be paid to the children or grandchildren of Walter McAtee, Jr., or their respective heirs. Having died without issue, his share is "subject (under the so-called elliptical clause of the will) * * * in all respects to the pro-visions and limitations made by this, my will, in reference to the other trusts hereby created." Of such a contingency in *Mercer v. Hopkins, supra*, p. 312, this court said: "If the income were not needed for either of these purposes, in the case of any heir or distributee who in the ordinary meaning of the word is already 'educated,' or if maintenance was not necessary, it would accumulate in the hands of the trustee until the time when the trust estate is to vest, that is, at the end of the twenty year period."

The chancellor has subjected the trust estate of Walter B. McAtee, Jr., to the limitations imposed by the testator on the trust estate of Mrs. Sutton, and has decreed that the two estates be combined, so that she shall receive the income and profits from both during her life with the right to dispose of two-fifths of both by will. This construction means that if Walter B. McAtee, Jr., had survived his sister, he, under the provisions of the will for him, would have taken half of her share, not disposed of by will, absolutely, and the income from the other half. "The best evidence of the testator's intention is found in what he has said in his will" (*Coudon v. Updegraf,* 117 Md. 71), and we cannot find anything in the will before us to indicate that the testator intended his daughter to have the power of disposition of more than two-fifths of one-half of his estate. He makes no provision for survivorship, except to fix the time when his estate shall finally vest. As we have declared, the appellant takes the interest she acquires in her brother's trust estate as heir or next of kin and not as his survivor, and as such she is entitled to take as one of the class entitled as heir or distributee of her brother. *Mercer v. Hopkins,* 88 Md. 292, 311-12; *Demill v. Reid,* 71 Md. 175, 191-2. Eventually the estate, unless consumed, will go to the heirs and distributees of Walter B. McAtee, Jr., and the effect of the chancellor's decree combining the share of the brother with that of the appellant is to provide two standards of distribution to the class designated under the will as heirs and distributees, which will conflict with the principles of the case cited, as well as a long line of decisions of this court. It will, therefore, appear that the two trusts must be separately administered, with the right of the appellant only to such amounts therefrom as she would be entitled to receive from time to time under the provision for "education and reasonable maintenance." *Mercer v. Hopkins,* 88 Md. 312. If the appellant die without issue, such parts of both trust estates as may survive her may then be combined, as the heirs and distributees of her brother and herself would thereafter be definitely ascertained to be the same persons.

It is our opinion, therefore, that the trustee shall hold the one-fourth share of Walter B. McAtee in trust for the term of twenty years after the death of the appellant for the purposes set forth in the will of her father and at the end of that time, unless principal and interest be consumed in the "education and reasonable maintenance" of the heirs of Walter B. McAtee, Jr., it shall be paid to those "who at that time answer to the description of the class that is then to take." *Mercer v. Hopkins, supra.* Assuming that the appellant will not require anything for her education, if her means and income are or may become insufficient for her needs, she will be entitled to receive such amounts from the income of her brother's share, and if that be insufficient, from the corpus, as may be necessary, from time to time, for her "reasonable maintenance."

The case will be remanded for the passage of a decree to conform with this opinion.

> *Decree affirmed in part and reversed in part, and case remanded for the passage of a decree to conform with this opinion, the costs to be paid out of the trust estate of Walter B. McAtee, Jr..*

———

Parke, J., filed a dissenting opinion as follows:

The testator bequeathed and devised his estate to the Safe Deposit and Trust Company upon the primary trust to divide it in four equal parts, with full power to the trustee to sell, convey and assign any part of his estate in order to make this equal division in four parts. After this division was so made, he directed his trustee to convey and assign absolutely one of said equal fourth parts to his son, his heirs, personal representatives, and assigns. Then the testator created a trust in two of these equal fourth parts for the benefit of his married daughter, who was to enjoy the income therefrom during her life, with power to dispose of

two-fifths of said trust estate by her last will. After the death of the life tenant, the trustee was directed to apply so much of the residue of this trust estate as might be necessary for the "education and maintenance of any child, children or children of a deceased child of my said daughter, who may be living at her death, until the expiration of twenty years after the death of my said daughter." At the end of this period, the trust was to cease, and the trust estate then remaining was bequeathed and devised to "the child, children or children of a deceased child of my said daughter, the issue of deceased children of my said daughter to take by substitution the share which their respective parents would have taken."

The testator then created a trust in the remaining one-fourth part into which his entire estate had been divided for the benefit of his son during his life, but without any power of disposition. After the death of the son, the income and the corpus of the estate were to be applied, so far as was necessary, "to and for the education and reasonable maintenance of any child, children or child of a deceased child of my said son, who may be living at his death until the expiration of twenty years after the death of my said son," when the entire trust fund was to "vest absolutely in the child, children, and children of a deceased child of my son, the issue of deceased children taking by substitution the respective share or shares which their respective parents would have taken."

Inasmuch as these two separate and distinct trusts left unprovided for the contingencies of either of his two children dying without issue, or of a failure of the issue of either during the remaining twenty year period limited by each of the two trusts, the testator next anticipated these possibilities by creating a further trust in this language: "That the share, part or interest of my said son, and the share of my said daughter so dying without children, and the share or shares of the child or children of my said children, so dying, during the continuance of these trusts, shall be held by said

trustee, and its successors, in trust, as to the realty for their respective heirs, and as to the personalty for such person or persons as under the laws of Maryland would be entitled to be the distributees of such deceased son or daughter or of such deceased child or children of such deceased son or daughter."

If the will had stopped at this point, the duration of the trust arising from the specified contingencies last mentioned would not have been expressly fixed, and its termination would have had to be determined by ascertaining the testator's intention through a construction of the language of the will, since the record shows all the trust estate to be personalty and the statute of uses does not apply to personal property. *Miller on Construction of Wills,* secs. 182, 168. However, the duration of the trust is declared by the following sentence at the end of the paragraph last quoted: "Subject, however, in all respects to the provisions and limitations made by this my will in reference to the other trusts hereby created, my intention being that all of the trusts created by this will shall terminate upon the end of twenty years after the death of the survivor of my said children."

This last sentence consists of two clauses. The first imposes upon the final trust certain "provisions and limitations" made with respect to the preceding trust, and the second clause is in apposition to the first, and, so, defines the first clause and explains that the term "provisions and limitations" refer to the preceding provisions and limitations prescribing how long the trust should continue, and the absolute vesting in possession of the estate at the end of that period. *Mercer v. Hopkins,* 88 Md. 292, 311, 312. This second clause is, therefore, restrictive and prevents a more comprehensive meaning being ascribed to the first clause.

The first trust was limited to the life of the daughter and twenty years after her death; and the second trust was likewise limited for the life of the son and twenty years following his death. Since the third trust was created to meet contingencies which might arise in one or both of the first and second trusts, it was necessary to adopt some limitation as to the length of the third trust, hence the first clause of

the provision under discussion, and the second clause to make it clear that *all* three trusts were to end no later than twenty years after the death of the survivor of the testator's two children; and this is accomplished by the construction that, if the provisions for a third trust would become operative either by reason of the death of the daughter without leaving children, or because of the daughter dying and leaving any child or children, who should die without children during the twenty year period after the daughter's death, then, in either contingency, the third trust would continue for twenty years after the daughter's death. In like manner, if, as here, the provisions for a third trust became effective either through a lack or failure of issue on the part of the son, then the duration of the third trust would, similarly, be twenty years counted from the death of the son.

It follows that, whether the property affected by the trust be realty or personalty, the trust for the benefit of the son for life must endure until the end of twenty years after the death of the son. *Supra.* But the trust is declared to be for the benefit of the heirs of the son, to the extent of the trust estate being real property, and of his distributees so far as the trust is personalty. As heirs and distributees are fixed and determined as of the date of death of the party through whom they inherit or claim, and as the law favors the early vesting of estates, the heirs and distributees to take the gift are those in being at the death of the son. *Marshall v. Safe Deposit Co.,* 101 Md. 1, 6, 8. Accordingly, the trust in question would continue for the benefit of such heirs and distributees twenty years after the death of the son, when such trust would end and the trust estate would vest in both enjoyment and possession in such heirs and distributees, their heirs, assigns or personal representatives, as the case may be. Under the facts of this record, the trust being of personal property and the daughter of the testator being the sister and the next of kin of the son at the time of his death, the equitable title to the trust property then passed to the sister, so as to give her a right to the immediate possession of the income, and this equitable title would be enlarged to

an absolute title when the trust ceased twenty years after the son's death. The sister is entitled to the income from the estate left in trust for her brother until the expiration of twenty years from his death, when she will have the right to the absolute possession of the corpus, and meanwhile the right to will, assign and transfer her absolute interest therein at the termination of the trust as well as her right to the income during the period of the trust.

This conclusion is different from the construction adopted by this court, which postpones the ascertainment of the heirs or distributees to take until the death of the surviving child, but suffers both the income and principal of the trust to be consumed in the "education and reasonable maintenance" of the sister, who is in her sixty-fourth year. It seems clear to the writer that, when the testator gave the income from the trusts to his son and daughter for life without any power to encroach upon the principal for their maintenance, and bestowed upon the trustee, after the death of the life tenant, the power to use the corpus of the trust only when "necessary for the education and maintenance of any" child or grandchild respectively of his son and daughter, he precluded the conception that the principal of either trust could otherwise be consumed. In conferring this power upon the trustee, he had in mind a particular object for the benefit of a definite and limited class, whose immaturity and dependence would make them the natural beneficiaries of such a provision. The sister is at an age where education is commonly no longer sought and, if she does not require maintenance, the trust will not be of actual benefit to her but be one for accumulation merely, since, by the opinion of the court, the trust estate, at her death, will go "to those who at that time answer to the description of the class that is *then* to take."

The case of *Mercer v. Hopkins*, 88 Md. 292, has been cited as controlling and supporting the opinion of the court. While there is a similiarity between the will construed in that case and the one at bar, there are substantial differences in their language and their provisions, which make against accepting as a precedent the case cited. *Supra.* The instant will con-

tains a power in one life tenant to dispose by will of a portion of the trust estate for her benefit, while the other life tenant has no such power. Further, the trustee of the respective trusts for the son and daughter has the right to apply, after the death of the life tenant, as much of the corpus of the several trusts as he might deem necessary for the education and maintenance of the grandchildren or great grandchildren, in certain circumstances, of the testator. These powers are not found in *Mercer v. Hopkins, supra*. In addition, the wording of the provision in the will at bar that is relied upon to make applicable the antecedent terms of the trusts is different. These dissimilarities in phraseology, and in provisions with reference to material matters which relate to and affect the plan of distribution, deprive *Mercer v. Hopkins, supra*, of its authority in the present case, where variant terms of the first and second trusts make the general provision relied upon inapplicable to differing trusts, except as to provisions and limitations indicating the duration of the trust estate created.

The difficulty of relying upon *Mercer v. Hopkins, supra*, as a precedent in the instant case is illustrated in the opinion of the majority when, under the construction adopted, it denies to the sister the power in the third trust that was conferred upon her in the first trust to dispose of two-fifths of the corpus of the trust by will, but confers upon her the enjoyment of both the income and principal, if necessary, for her "education and maintenance," as was similiarly provided in the first trust for the benefit of her children and grandchildren. If the enjoyment of both income and principal be one of the "provisions and limitations" embraced by the sentence in controversy, why is not the power to appoint brought by the same process of construction, within the purview of this sentence? Nevertheless, if the power of the trustee to use the income and principal and the power of the sister to appoint be both held similiarly to appply to the third trust, the anomalous situation would result of maintenance and education being afforded one not of the particular class specified by the testator, and of the estate passing to the distribu-

tees of the son under the terms of the third trust subject to a reduction of two-fifths. It is a fortuitous circumstance that the sister happens to be at present both the next of kin and heir at law of the son. The testator contemplated a number of possible contingencies, and among them was that the son might be the only next of kin and heir at law of the sister. Such a situation would have simply substituted the son for the daughter in the present problem. Could it be successfully maintained that the son would then have had the power under the third trust to appoint by will two-fifths of the trust set apart for the sister and her issue? Other illustrations might be given, but these are sufficient to demonstrate that *Mercer v. Hopkins, supra,* is not decisive in the construction of the will before this tribunal.