## JOHN ,WILLIAM MARSHALL, Admr. of SAMUEL H. MERCER et al., *vs.* THE SAFE DEPOSIT AND TRUST COMPANY et al., Trustee, et al.

*Devise and Legacy—Equitable Interest Vested but Defeasible—Alternative Limitations Over—Re-survivorship of Accrued Shares—After Acquired Property Held Not to Pass Under a Deed of Trust.*

When under a devise there are two periods of time to which the vesting of an estate may be referred, it will be held to vest at the earlier period, unless the will clearly indicates the intention of the testator that the estate shall not vest in the devisee until the latter period.

When a will creates a trust to endure for a designated period for the benefit of children, and it is provided that upon the death of a child leaving issue his share or income shall be paid to his issue, and in the event of the death of a child without issue, his share shall be divided among the surviving children or their issue, then the share of a child who dies during the existence of the trust vests absolutely, upon his death, in his issue, if any, or in the surviving children, if he leaves no issue; and such vesting is not postponed until the termination of the trust.

When the income of property held in trust is to be divided among a number of persons, the *corpus* being given to them at the end of a certain period, and it is provided that if anyone of them dies without issue before the time for distribution his share shall survive to the others, and one of them dies within that time without issue, then, upon the subsequent death of another during the existence of the trust, there is no, further survivorship as to that share, but the same is disposed of as the absolute property of those devisees taking it upon the terms of the limitation over.

A deed of trust conveying all the grantor's property of every description does not operate to convey property which the grantor acquired under a will taking effect after the execution of the deed, when the granting clause thereof contains no words sufficient to pass after acquired property.

When there is a conflict between the granting clause of a deed and the *habendum* clause, the estate given in the former prevails over that described in the *habendum*.

A testatrix gave a sum of money to a trustee to hold for the benefit of her four grand-children, Samuel, George, Mary and Margaret; for the term of twenty years from the death of the testatrix, and directed that the income "be equally divided between them, and at the expiration of the said term of twenty years the said sum shall be equally divided between them; but in the event of any of my grand-children dying within the said period of twenty years, then and in that case it is my wish that the share or income of such child so dying, shall be paid to his or her children *per stirpes* and not *per capita;* but in case any grand-child should die without issue, then and in that case the share of such grand-child shall be equally divided between the surviving grand-children; in all cases the children of any grand-child to have such grand-child's share *per stirpes* and not *per capita,* both in regard to the income during the said period of twenty years, and at the final division of my estate at the termination of that period." Within the twenty year period there died, first, George, leaving a widow and a will and no issue. Then Samuel died, likewise without issue, leaving a widow to whom his will gave all of his estate. Next Mary died, leaving a will. She had had one child who pre-deceased her. At the expiration of the twenty year period the only surviving grand-child of the testatrix was Margaret. *Held,* that under the will the four named grand-children took vested equitable interests in the estate, defeasible upon the death of any one within twenty years after the decease of the testatrix, and the share of one so dying passed to, and vested in, his issue, if he had any living at the time of his death; and in case he died without leaving issue, then his share passed to the surviving grand-children and became absolutely vested in them, not at the end of the twenty year period but at the time of the death of the grand-child so dying without issue.

*Held,* further, that upon the death of George without issue his share could not be disposed of by his will but passed to the three surviving grand-children, and upon the deaths of Samuel and Mary without issue their portions of this accrued share did not re-survive to the other grand-children but being the absolute property of Samuel and Mary passed under their wills.

*Held,* further, that upon the death of Samuel, Mary acquired one-half of his original share and that this interest together with the one-third of the share of George which she had acquired upon his death passed under her will.

Appeals from the Circuit Court of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Charles McH. Howard,* for Marie Henriette Mercer, appellant.

*Edward I. Koontz,* for Charles H. Harding, appellant.

*John Wm. Marshall,* for the Administrator *c. t. a.* of Samuel H. Mercer.

*D. K. Este Fisher,* for Margaret W. Schapiro *et al.,* appellees.

*George Whitelock,* filed a brief for the trustee under the will of Lavinia Hopkins.

McSHERRY, C. J., delivered the opinion of the Court.

The record now before us contains four appeals. They were taken against a decree passed by the Circuit Court of Baltimore City on the thirty-first day of December, nineteen hundred and four. By that decree the residuary clause of the last will and testament of the late Lavinia Hopkins was interpreted. The testatrix died on November the twenty-eighth, eighteen hundred and eighty-four. The clause which has given rise to these cases, after first directing that all of the residue of the estate of the testatrix should be converted into money by the executor named in the will, then gave the sum thus realized unto the Safe Deposit and Trust Company of Baltimore City, "in trust to be by said company invested in such securities or in such manner' as the officers of said company shall deem most judicious for the use and benefit of my grand-children, Samuel H. Mercer, George D. Mercer, Mary S. Mercer and Margaret W. Mercer, for the term of twenty years, reckoning from the day of my death, the interest and income thereof to be equally divided between them share and share alike and at the expiration of the said term of twenty years the said sum shall be equally divided between them, but in the event of any of my grand-children dying within the said period of twenty years, then and in that case it is my wish that the share or income of such child so dying shall be paid to his or her children *per stirpes* and not *per capita,* but

in case any grand-child should die without issue, then and in that case the share of such grand-child shall be equally divided between the surviving grand-children, in all cases the children of any grand-child to have such grand-child's share *per stirpes* and not *per capita*, both in regard to the income during the said period of twenty years and at the final division of my estate at the termination of that period."

The Circuit Court held that under this clause the time for the vesting in right and in possession of the residue of the decedent's estate and all shares thereof was fixed at the end of the twenty years trust period ; and that inasmuch as Margaret W. Mercer, now Schapiro, was the only one of the four named grand-children alive at that time, and as none of those who had died had left any child or descendants surviving, Mrs. Schapiro was entitled to the whole trust fund. Mrs. Schapiro having previously executed a deed of trust to the Safe Deposit and Trust Company, the decree directed the fund to be transferred to that company for her benefit. That company accordingly appears as the appellee in all four cases and claims the whole trust fund for her. The contentions of the four appellants will be set forth presently.

The twenty years trust period fixed in the will came to an end on the twenty-eighth of November, nineteen hundred and four and on that day the *corpus* of the trust estate became distributable. On May the thirteenth, eighteen hundred and eighty-seven, George D. Mercer, one of the four grand-children named in the residuary clause, died. He left a widow but no child surviving him. He never had had issue. By his will he disposed of all his property to his wife, Jennie W. Mercer, who has since married James R. S. Lake and she, together with her last-named husband, is appellant in one of the four cases. She claims, we suppose, the one-fourth interest in the whole trust fund to which her first husband would have been entitled if he had survived the twenty year trust period. We say, we suppose she makes the claim just indicated, because there is no other that she could possibly set up, and, as the sequel will show, this one is wholly untenable. The

next one of the four named grand-children who died was
Samuel H. Mercer and he departed this life on January the
twenty-seventh, eighteen hundred and ninety-seven.  He left
a widow, Marie Henriette Mercer, surviving him, but he too,
had never had any children.  He died testate and by his will
he gave all of his estate to that widow.  She is one of the
appellants on the record and she claims in right of her de-
ceased husband and under his will, one-third of George D.
Mercer's original share, which, she contends, accrued to her
husband on the death of George.  Mr. John W. Marshall is
the administrator *c. t. a.* of Samuel H. Mercer's estate and
in that capacity appears as appellant in another of the four
appeals.  As the right he represents is identical with that
asserted by Mrs. Marie Henriette Mercer both of these ap-
peals will be treated as one case.  On September the sixth,
nineteen hundred and four, Mary S. Mercer, another of the
four named grand-children, died.  She had married A. Ster-
ling Pennington.  The issue of that marriage was a son who
died in eighteen hundred and ninety-two.  In 1887, Mr. Pen-
nington died and his widow subsequently married Charles H.
Harding who now survives her.  They had no issue.  She
left a will by which she gave the residuum of her estate to
her husband and named him executor.  He appears, individ-
ually and in his capacity of executor, as appellant in one of
the cases and claims in right of his wife and under her will a
one-third of the original share of George D. Mercer, which
he contends, accrued to his wife on the death of George; and in
addition, a one-half of the original share of Samuel H. Mer-
cer, which, he also contends, accrued to his wife on the death
of Samuel.

We do not propose to review or discuss the large number
of cases cited in the several briefs which have been filed, be-
cause, in considering questions like those here involved, ad-
judications interpreting other wills are more apt to be confus-
ing than helpful.  And this is so because slight variations in
the phraseology of other wills and dissimilarity in the condi-
tions surrounding other testators necessarily influence the

conclusions reached in other instances.   The same word has often different meanings ascribed to it in different cases, in order that the apparent testamentary intention might be given effect in each.   There are certain fixed and unbending legal principles which it is necessary to invoke in many instances, even though they may when followed thwart an obvious intention; and there are others equally well settled, which whilst producing no such result, are so universal and uniform in their application that testators are treated as having drawn their wills in accordance with and in subordination to their effect.   When, therefore, a situation arises where the words written in a will must be interpreted so as to ascertain the testamentary intention and so as to uphold it, when ascertained, the words will be read in the light of these last-named principles, and be given a meaning which they require.

Unless the will clearly and unmistakably shows, or unless there is plainly inferable therefrom, an intention to postpone until the end of the twenty year period the vesting in right of all interests whatever in the trust estate, the more modern rule which favors an early vesting, where there are two periods to which the vesting may be referred, will be followed, and the estate will be held to have vested not, at the remote, but at the earlier period.   *Cox* v. *Handy*, 78 Md. 108, and the recent case of *Hoover* v. *Smith*, 96 Md. 393, are apposite illustrations of this rule.   No beneficial interest is given to the trustee under the will before us.   The fund is bequeathed to the Safe Deposit and Trust Company in trust for the use and benefit of the four *named* grand-children during a period of twenty years and at the end of that time the trustee is directed to equally divide the fund between them; in the meantime, however, it is required to pay over the income to them.   They were given the right to have immediate possession of the income, but their right to the possession of the *corpus* was postponed for twenty years.   But postponement of possession does not, of itself, indicate an intention to postpone a vesting.

The four named grand-children took vested equitable inter-

ests in the residue, defeasible upon their death within twenty years after the decease of the testatrix.   And these equitable interests were thus defeasible because upon the death of any one of the four within the period named his or her share was, by the terms of the clause, limited over in the alternative manner which will be discussed in a moment.   When the residuary clause created the trust for the four grand-children and restricted the duration of that trust to a definite number of years, it did not stop there.   The testatrix appreciated the possibility of at least some of the four dying before the expiration of the trust, and she was confronted with two contingencies in respect to that possibility.   One was the contingency of the death of a grand-child within the trust period who left issue surviving; and the other was the contingency of the death of a grand-child within the trust period who left no issue surviving; and for both of those contingencies she proceeded to make provision.   The provision thus made conclusively indicates that the original shares given by the first part of the clause were, and were intended to be, vested but defeasible equitable interests.   The first contingency dealt with was that of the death of a grand-child leaving issue surviving. This event did not happen but that does not affect the question.   "But in the event," says the clause, "of any of my grand-children dying within the said period of twenty years, then and in that case it is my wish that the share or income of such child so dying shall be paid to his or her children, &c."   Does this mean children living at the death of the grand-child, or does it mean children *then* living *and* who shall, in addition, survive the period of distribution ?   It does not say this last-named condition must exist.   To superadd it would incorporate in the will a distinct provision which is not there now.   Besides reconstructing the clause by the insertion of the condition indicated, a construction which restricts the word children to those who were living, not merely at the grand-child's death, but also at the period of distribution, would introduce a fluctuating class of children liable to be wholly depleted by death before the end of the twenty years,

and with not a provision made in that event for the devolution of the original share of their parent, and consequently with a resulting intestacy as to that share.    Obviously, had one of the grand-children died during the trust period leaving surviving children, those children would have taken a vested interest in "the *share* or *income* of" such deceased grandchild, with a right to the immediate possession of the income, but with the right to the possession of the *corpus* deferred until the expiration of the twenty years.    *Ridgely* v. *Ridgely*, 100 Md. 230.

Now, the second contingency with which the testatrix dealt was thus phrased by her:    "But in case any grand-child should die without issue, then and in that case the share of such grand-child shall be equally divided between the *surviving grand-children.*"    To what period of time are we to look in order to ascertain who answer the description of surviving grand-children ?    There are but two periods to which reference can possibly be had—the one, the death of the grandchild ; the other, the end of the twenty year trust period. These are alternative and not coincident periods.    If you say it is the latter period, then before the twenty years had actually elapsed it would have been impossible to ascertain who, or whether anybody, would ultimately answer the description of "surviving grand-children;" though the income was distinctly directed to be paid *at once* and *before* the expiration of the twenty years to the "surviving grand-children."    Take, for instance, the situation as it existed when George D. Mercer died in 1887.    If, before you could determine who were surviving grand-children, you were obliged to wait until November, nineteen hundred and four, how could you pay the income accruing after his death and before the end of the twenty years, to the remaining three grand-children, until eighteen hundred and ninety-seven when Samuel died, and thereafter to the two grand-daughters ?    As both *corpus* and *income* are affected, the individuals who, as surviving grandchildren, were entitled to the *income*, must be the same individuals who were entitled to the *corpus;* unless the description

"surviving grand-children" means one set of persons when you are dealing with the *income*, and a totally different set when you are dealing with the *corpus*. There is no warrant for holding that as respects income the three grand-children who survived George D. Mercer were "surviving grand-children," within the meaning of the will; but as respects *corpus* they were not. The term "surviving grand-children" has not two meanings, including in the one, three persons, and in the other, only one person. There are, as we have said, alternative limitations in the clause, first, to the issue of the deceased grand-child, and such issue must necessarily be ascertained as of the date of the grand-child's death; and, secondly, in default of such issue to the "surviving grand-children," who are to take in default of issue and who are, therefore, to be ascertained as of the same period. We say to be therefore, *then* ascertained, because the period fixed for the ascertainment of the one class is precisely the same as that prescribed for the ascertainment of the other class. It is obvious, then, if the will is to have a sensible and consistent meaning attributed to it, that the earlier of the only two possible periods of vesting must be accepted as the true period; and so accepting it the four original shares were vested, though liable to be divested as to any grand-child upon the death of that grand-child before the expiration of the twenty years.

Upon the death of George, Samuel and Mary, respectively, their original shares became *accrued* shares, and the next inquiry is, whether under the terms of this will those accrued shares re-survived, In 3 *Jarman on Wills* (5th Am. ed.), p. 560, it is stated: "It has long been an established rule, that clauses disposing of the shares of devisees and legatees dying before a given period, do not, without a positive and distinct indication of intention, extend to shares accruing under the clauses in question. As where a man gives a sum of money to be divided amongst four persons as tenants in common, and declares that if one (qu. any) of them die before twenty-one or marriage, it shall survive to the others. If one dies, and three are living, the share of that one so dying will survive to

the other three, but if a second dies, nothing will survive to the remainder but the second's original share, for the accruing share is a new legacy, and there is no further survivorship." Thus, in *Ex parte West*, 1 Br. C. C. 575, where a testator bequeathed to A, B and C, the three sons of S, 1,000 pounds each, the interest to be added to the principal yearly, until they should respectively attain the age of twenty-one years; and in case any of them should die before that age, then to the survivors. A and B died under twenty-one; and the question (which was raised upon petition) was, whether that part of the share of B which accrued to him on the death of A went over to C on the death of B. LORD THURLOW thought that he was bound by the authorities (which he hesitated to overrule on petition) to decide that it did not survive again; but gave the parties leave to file a bill, which was done, and the case came on to a hearing before SIR LL. KENYON, M. R., who decided against the survivorship of such accrued share. The general rule was recognized by this Court in *Hoxton* v. *Archer*, 3 G. & J. 213, where CHIEF JUSTICE BUCHANAN said: "There being, in this case, no survivor over of a survived share, under the general rule, that where there are no particular and sufficient words used for that purpose, surviving shares will not survive again." The same doctrine was restated, though not applied, in *Turner et al.* v. *Withers et al.*, 23 Md. 43. The question has sometimes arisen as to the effect of particular expressions to carry the accrued as well as the original share. The word *share* from an early period (*Woodward* v. *Glassbrook*, 2 Vern. 388,) has been held *not* to have this operation, though the contrary was decided by LORD HARDWICKE in *Pain* v. *Benson*, 3 Atk. 78, but the authority of this case, says Mr. Jarman (3 *Jar. on Wills*, 5 Am. ed. 561) has been repeatedly denied and the point has long ceased to be the subject of controversy. In *Rickett* v. *Guillemard*, 12 Sim. 88, a testator bequeathed 300 pounds to four persons, to be divided into equal shares, to be paid at twenty-one; and in case of the death of either before twenty-one, *such share* to survive to the others. Two of the legatees died during

minority in the testator's lifetime.  SIR L. SHADWELL, V. C.,
held that on the death of the first his fourth devolved to the
other three; on the death of the second his original fourth
devolved to the two survivors; but the third of the first-men-
tioned fourth which he would have been entitled to absolutely
if he had survived the testator, lapsed.

There is no word or expression in the will of Lavinia Hop-
kins .indicating an intention that accrued shares, under the
residuary clause, were designed by her to resurvive.    That
she contemplated there might be. such shares is evident from
a perusal of the clause; but she studiously, or at least dis-
tinctly, refrained from inserting any limitation which refers in
the most remote way to shares which she forsaw might thus
accrue.    There being no indication, and certainly no positive
and distinct indication, of an intention that the accruing shares
(which are in reality new legacies) should resurvive, they did
not resurvive ; and we are now to inquire what disposition is
to be made of them.    Before doing this, however, it will be
appropriate to observe that there is nothing in the case of
*Mercer* v. *Hopkins*, 88 Md. 292, at all in conflict with the views
just expressed.    And there is no conflict, because the will of
Johns Hopkins there under consideration contained a provis-
ion subjecting the devises over to the same limitations as were
applicable to the original shares.    This was regarded as suffi-
cient evidence of an intention that successive limitations of ac-
cruing shares were contemplated and designed by the testator.

We have said that George D. Mercer died in May, eighteen
hundred and eighty-seven, without ever having had issue.
Under the second of the two contingencies contained in the
residuary clause, his share devolved to the three surviving
grand-children, namely, Samuel, Mary and Margaret.    His
vested but defeasible interest terminated upon his death, by
virtue of the express terms of the will of Lavinia Hopkins.
He consequently had no interest which he could dispose of by
his will, and, hence, his widow, now the wife of Mr. Lake, took,
under her first husband's will, nothing as respects the trust
estate.    The claim which she sets up in No. 53—the third of

the four appeals—has no foundation to support it. The appeal in her behalf and by her as executrix of her first husband's estate must therefore be dismissed.

Turning now to the first and last of the four appeals, which we have heretofore said would be considered together, the primary inquiry is, to what interest is Marie Henriette Mercer, the widow of Samuel H. Mercer, entitled? There is a subsidiary question presented with respect to the effect of a deed of trust executed by Samuel in his lifetime.

Upon the death of George D. Mercer in 1887, his one-fourth share devolved to the three then surviving grand-children, according to the conclusions we have already reached and announced. One-third of that original one-fourth or one-twelfth of the whole, vested in Samuel H. Mercer and that one-third being an accruing share, and the will of Lavinia Hopkins not having limited over any accruing share, did not, upon the death of Samuel, resurvive to the other grand-children. It was, therefore, a disposable interest vested in him and upon which his will could operate. Under his will that one-third goes to Mr. Marshall as administrator *c. t. a.* and ultimately to the widow of Samuel; unless a deed of trust executed by Samuel on February sixteenth, eighteen hundred and eighty-four, is effective to convey that one-third to the trustee that is now substituted in place of those nominated in the deed. It is true this same deed was before us in *Mercer* v. *Hopkins*, 88 Md. 292, and it was there held that it conveyed the equitable interest of the grantor in a trust estate created by the will of Johns Hopkins. But the trust estate dealt with in that case was not the one here involved. John Hopkins had died some years before the deed was executed and whatever interests Samuel H. Mercer acquired under his great-uncle's will, whether then present, future or contingent, they were not, in any sense, *after acquired* property. Before the deed of trust can be said to include the accruing share with which we are now concerned, it must appear that that share was an existing or contingent interest to which Samuel was entitled *when the deed was executed;* and that the granting clause of the deed contains apt

and sufficient words to transfer that interest.    But when the deed was made Lavinia Hopkins, who was one of the grantees named in it, was still alive, and of course, therefore, Samuel H. Mercer had acquired no interest under her will and he was then possessed of no estate in her property.    The deed does not purport to convey after-acquired property ; but carefully recites in the preamble that the grantor was about to leave this country and to take up his residence in Europe, and that it would be greatly to his interest "to leave his estate properly managed and controlled by some responsible person here," and then proceeds in the premises to grant and convey unto Lavinia Hopkins for life and on her death to other named grantees "all his, the said Samuel H. Mercer's property, real, personal and mixed of whatsoever description and wheresoever situate."    If it were conceded that he intended to convey and that he legally could convey an estate, interest or property which he might ultimately acquire under the will of the first named grantee, the terms used in the premises of the deed to describe what he *did* convey are wholly inadequate to include the one-third of George's one-fourth, which accrued to Samuel three years after the date of the deed.    The subsequent broader expressions contained in the *habendum* and *tenendum* clause do not enlarge the granting words, or bring within their scope any property acquired long after the execution of the deed.    The *tenendum* never qualified the estate conveyed, but the *habendum* may do so, when it is not in conflict with or repugnant to the premises. *Trustees, &c.*, v. *Manning*, 72 Md. 126.    In a word, the estate given in the premises must prevail over that described in the *habendum*.    *Budd* v. *Brooke*, 3 Gill, 196; *Winter, Guard* v. *Gorsuch et al.*, 51 Md. 180.    We hold then that the deed of February, eighteen hundred and eighty-four, does not operate to transfer the accruing share which Samuel H. acquired, and that the same share passed under his will to his personal representatives for the benefit of his widow.    As respects appeals No. 51 and 54 therefore, the decree will be reversed.

The remaining case is No. 52.    That case comes up on the

appeal of Charles H. Harding as residuary legatee under and as executor of the last will of Mary S. Harding, who was formerly Mary S. Mercer. As we have heretofore stated, Mary S. Mercer first married A. Sterling Pennington. The issue of that marriage died during the lifetime of its mother and after the death of its father. Subsequently Mrs. Pennington married Mr. Harding. She died in September, nineteen hundred and four. In pursuance of the views we have hereinbefore expressed when Mrs. Harding's brother George died she acquired one-third of his original share of one-fourth. When her brother Samuel H. died she acquired one-half of his original share of one-fourth, and Mrs. Schapiro acquired the other half. Mrs. Harding, therefore, at the time of her death was entitled to one-third of one-fourth and to one-half of another fourth as accruing shares and that estate or interest passed under her will. The executor who represents her estate is consequently entitled to five twenty-fourths of the whole trust fund; and the decree must be reversed in No. 52.

Inasmuch as the widow of Samuel H. Mercer is entitled to the one-twelfth or two twenty-fourths of the whole trust fund; and inasmuch as the executor of Mrs. Harding's estate is entitled to five twenty-fourths of the same fund, and as Mrs. Lake is entitled to none of it, the remaining seventeen twenty-fourths belong to Mrs. Schapiro. The decree, which awarded the whole fund to Mrs. Schapiro, will be reversed and the cause will be remanded that a new decree may be passed conforming to the views herein expressed, the costs to be paid by the Safe Deposit and Trust Company, trustee of Mrs. Schapiro, out of the funds of the latter in its hands.

*No. 53 appeal dismissed. Nos. 51, 52 and 54, decree reversed and cause remanded the costs to be paid by the Safe Deposit and Trust Company, trustee, of Mrs. Schapiro.*

(Decided March 24th, 1905.)