EVA MAY DAVIS

*vs.*

CHARLES EDWARD HILLIARD, Executor, Etc.

*Wills: construction; intention; technical words; widow's rights; renunciations; effect of—; dower right ceases as though wife were dead. Trusts: until each cestui que trust becomes of age; balance retained for annuities to the others.*

A widow's renunciation, and election to take under the will, should be construed as equivalent to her death, unless such construction contravenes some manifest intention of the testator as expressed by the will.                    · p. 355

The intention of the testator, as gathered from the four corners of the instrument, is to prevail, if there be apt words used to effectuate it, unless it contravenes some positive principle of law, or be frustrated by some unbending rule of construction assigning an inflexible meaning to particular words. pp. 356-357

In discovering such intention, all parts of a will are to be construed together, without regard to the order in which they occur, so as to form, if possible, one consistent whole.      p. 357

In general, technical words are supposed to be used in their legal or technical sense, but a different meaning will be given them when the context clearly indicates that such technical import would defeat the manifest intent of the testator.   p. 357

The predominant idea in the testator's mind, when discovered, is to be heeded, as against all doubtful and conflicting provisions.                                                    p. 357

When a general intent and a particular intent are inconsistent, the latter must be sacrificed to the former.        p. 357

Every intendment must be made against holding a man to be intestate who sits down to dispose of the rest and residue of his property.                                              p. 357

In construing a will, it was *held,* that by the provision as to the vesting and payment of the estate to the grandchildren, it meant that each grandchild should receive its portion of the corpus upon its attaining the age of 30 years; and that the will did not require the whole corpus to be held in trust until the youngest grandchild reached that age; the trustee to retain of the property a sum sufficient for the payment of the annuities.

pp. 358-359·

*Decided November 23rd, 1916.*

Appeal from the Circuit Court for Washington County. In Equity. (KEEDY, **J.**)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER and STOCKBRIDGE, JJ.

*Frank A. Wagaman* (with whom was *George A. Davis* on the brief), for the appellant.

*Edgar Allan Poe* and *J. A. Mason* (with whom was *J. Kemp Bartlett, L. B. Keene Claggett* and *Levin Stonebraker* on the brief), for the appellees.

BURKE, J., delivered the opinion of the Court.

The bill in this case was filed for the construction of the will of John L. Nicodemus, late of Washington County, de-

ceased. The Court sustained a demurrer to the whole bill, and from its order dismissing the bill, the complainant has prosecuted this appeal.

Mr. Nicodemus died on July 30, 1915. His will was dated May 2nd, 1889, and to which there was one codicil bearing date November 10, 1910. His will and codicil were admitted to probate by the Orphans' Court of Washington County, and letters testamentary upon his estate were granted to Charles Edward Hilliard. Mr. Nicodemus created a trust as to all the rest and residue of his estate, and appointed Alexander Neill, of Washington County, trustee, with power to manage, control and dispose of the trust estate as directed by the will. Mr. Neill died, and by the codicil above referred to Charles Edward Hilliard was substituted trustee in his place and stead, and was clothed "with all the powers conferred by my said will upon the said Alexander Neill as trustee; and I further nominate and appoint the said Charles Edward Hilliard to be the sole executor of my said last will and testament." His last will directed that the trust therein created should be administered under the supervision of the Circuit Court for Washington County, sitting as a Court of Equity, and that Court has assumed jurisdiction of its administration.

The testator left surviving him a widow, four children and eight grandchildren, viz: (1) Virginia S. Nicodemus, widow; (2) Eva May Davis, a daughter; (3) Edwin Nicodemus, a son; (4) Cora B. Wilson, a daughter; (5) Georgie A. Conner, a daughter; (6) Roy Wilson, Frank Wilson, Harry Wilson, John Wilson and Margaret Wilson, grandchildren, the children of Cora B. Wilson; (7) Edwin Conner, Catherine Overington and Ashby Conner grandchildren, the children of Georgie A. Conner.

We now turn to the dispositions of the estate made by the will:

*First*—The testator owned a house and lot located on Washington street, in Hagerstown, Md. This house and lot

he devised to his wife, Virginia S. Nicodemus, for and during her life, and upon her death he willed and directed "that said property be sold and conveyed by my executor hereinafter named, and the proceeds of such sale shall be by him paid to my *grandchildren,* in equal proportions, share and share alike."

*Second*—He also owned certain shares of stock, standing in his name, of the Peoples National Bank of Hagerstown and of the Second National Bank of Hagerstown. This stock he bequeathed to his wife, Virginia S. Nicodemus, for and during her life, and upon her death he directed that the stock be sold. The proceeds of the sale he gave and bequeathed to his *grandchildren.* He also owned some unimproved lots of ground, and a two-fifths interest in a tract of land near Hagerstown, called Eastside Park. These lots and his interest in Eastside Park he directed his executor to sell, and to pay the proceeds of such sales "to the trustee hereinafter named, and shall be held by him upon the trusts and conditions as are hereinafter declared of and concerning the residuum of my estate."

*Third*—He then devised for life, to each of his daughters, named above, a house and lot of ground referred to in the will, and he directed that, upon the death of each daughter the house and lot devised to her for life be sold by the executor, and the proceeds paid over to the trustee named in the will to be held by him "upon the trusts and conditions hereinafter declared of and concerning the residuum of my estate." Then follows a devise to the Trinity Reformed Church of Boonsborough, Washington County, but with this devise we are not concerned in this case.

By the seventh clause of the will the testator devised and bequeathed "unto Alexander Neill of Washington County, Maryland, in trust for the uses and purposes hereinafter set out *all the rest and residue* of my estate, both real and personal and wheresoever situated. * * * he to hold and receive the same upon the following trusts and conditions, and for

the uses and purposes following, etc." This clause proceeds
to define the duties of the trustee, and to confer upon him
broad powers with respect to the management and control of
the estate, including the power of sale. The following lan-
guage appears in this clause: "And from and out of the rents,
income, interest and dividends received by him from my es-
tate in his hands, I will and direct that he shall pay to my
son, Edwin Nicodemus, annually during his life the sum of
two hundred and fifty dollars; and shall likewise pay annu-
ally to my daughter, Georgie Addie Conner, during her life,
the sum of one thousand dollars, and shall likewise pay annu-
ally to my daughter, Eva May Davis, during her life the sum
of one thousand dollars, and shall likewise pay annually to
my daughter, Cora V. Wilson, during her life, the sum of one
thousand dollars and shall likewise pay to each of my grand-
children until they respectively attain the age of thirty years,
the sum of two hundred and fifty dollars annually." The
testator stated in the will that the legacy given to his son
Edwin is less than those given to his sisters because he had
already advanced to his son "large sums of money."

The eighth and ninth clauses of the will are here tran-
scribed:

"8.  I further will and direct that any income,
rent, interest or dividends which may remain in the
hands of said Trustee at the end of any year, after hav-
ing paid therefrom the amounts hereinbefore directed
to be paid shall be added to and become part of the
principal of my estate in his hands and subject to the
same trusts and conditions as are herein declared of
and concerning my estate in the hands of said Trus-
tee."

"9.  I further will and direct that upon and so
soon as the eldest of my grandchildren attains the age
of thirty years said trustee shall divide the said estate
in his hands into as many parts as there are children
of my son and daughters then living, and the one part
thereof he shall then pay to said grandchild who has
attained the age of thirty years, and shall thereafter

as each of my said grandchildren attains the age of thirty years pay to him or her the one part of the principal of my estate in the hands of said trustee, ascertained as aforesaid, such payments of principal of my estate to my said grandchildren to be subject, however, and conditioned to the prior payment of the annual payments hereinbefore directed to be made to my children and grandchildren, it being my will and said trustee is hereby directed to retain at all times in his hands a sufficient sum of money or estate, the interest of which will be sufficient for the payment of said annual payments to my children and to such of my grandchildren as shall not have received payment of their part or portion of the principal of my estate."

There can be no doubt that the proceeds of the sale of the unimproved lots and of the testator's two-fifths interest in Eastside Park passed to the trustee to be held by him subject to the trust created by the will. The will so states. And it is likewise beyond question upon the express language of the will, that the proceeds of the sales of the houses and lots mentioned in the first, second and third clauses of the will would pass to the trustee subject to the provisions of the trust. Virginia S. Nicodemus, the widow, renounced in writing all claim to the devises and bequests of both real and personal property made to her by her husband's will.

The bill was filed by Mrs. Eva May Davis, a daughter of the testator, and the position taken by her in the sixth, seventh and eight paragraphs of the bill are here transcribed:

"Sixth. Your oratrix now charges and alleges that the said John L. Nicodemus died intestate as to the income, rents, issues and profits of all that real estate by said will devised to the said Virginia S. Nicodemus for and during her natural life which has arisen and may arise during the life of the said Virginia S. Nicodemus; and that the life estate in the said real estate for the life of the said Virginia S. Nicodemus passes to the heirs-at-law of the said John L. Nicodemus.

"Seventh. Your oratrix further charges and alleges that the said John L. Nicodemus died intestate as to the issues, income and profits which have arisen or will arise during the life of the said Virginia S. Nicodemus from the stock owned by and standing in the name of the said testator in the People's National Bank of Hagerstown and the Second National Bank of Hagerstown, and that the life estate in the said stock for the life of said Virginia S. Nicodemus passes to the heirs-at-law of the said John L. Nicodemus.

"Eighth. Your oratrix further charges and alleges that the provision of said will whereby the said testator attempted to create a trust of the residue of his estate for the benefit of the grandchildren of the said testator is void so far as the corpus of said residue is concerned, and that by a true construction of said will the said testator died intestate as to the corpus of said residue, and that said residue passes to the heirs-at-law of said Jno. L. Nicodemus."

The bill prayed for the passage of a decree construing the will and determining that the testator "died intestate as to that part of his estate as to which he is hereinbefore alleged to have so died," and for other and further relief.

The propositions asserted by the appellant in the sixth and seventh paragraphs of the bill appeared to have been abandoned. They were not discussed in the argument of her counsel in this Court and are not adverted to in his brief. We cannot give our assent to these propositions. The position taken in those paragraphs is that the renunciation of Mrs. Nicodemus resulted in an intestacy as to her life estate in the house and lot and bank stock mentioned in the first and second clause of the will. As we have seen the widow was devised and bequeathed a life estate in these properties, and upon her death the executor was directed to sell them and pay the proceeds to the grandchildren of the testator, share and share alike. There is no expression in the will to prevent the application of the general rule stated in *Randall vs.*

*Randall,* 85 Md. 430: "The rule followed by both the English and American Courts is, that a widow's renunciation and election to take as against the will is equivalent to her death, unless it contravenes some manifest intention of the testator as expressed by the will. In *Clark et al* v. *Tennison et al.,* 33 Md. 92, where by the will a gift was to the wife during her widowhood, with a limitation over to the children upon her death, it was held, in order to carry out the plain intention of the testator, that the will should be construed as giving the property to the children upon the termination of the estate given to the wife, whether that be by her marriage or her death. In *Ferguson's estate,* 138 Pa. St. 208, the Court in a well considered case, after stating the reasons for the rule, says, that the law must have a settled and uniform rule, and it is that the widow's election to take against the will is equivalent to her death.

Some of the authorities that support this view, are the cases of *Small* v. *Marburg,* 77 Md. 11; *Lainson* v. *Lainson,* 18 Beav. 1; *Craven* v. *Brady,* L. R. 4 Eq. 209; *Jull* v. *Jacobs,* 3 Ch. Div. 703; *Stephenson* v. *Stephenson,* 52 L. Times (N. S.) 576. In the recent case of *Boyd* v. *Sachs et al.,* 78 Md. 497, where the question upon the construction of a will was somewhat similar to the one here, this Court said: "The widow's marriage was to have the same effect upon all the interests devised and bequeathed by the will as would have been wrought by her death. By the third clause of the will the real estate was given to Daniel, the son, after the widow's death, and by the fourth clause, it was stated that in case of his death, before the widow, it should go to his sisters and their heirs as tenants in common. The plain meaning of these clauses is that Daniel was to take the real estate on the termination of the widow's life estate (by death or marriage), and that if he should die before such termination, it should go to his sisters'. " This rule was applied in *Vance estate,* 141 Pa. 201; *Holderby, Administrator,* v. *Walker,* 56 N. C. 46; *Morris* v. *Garland's Administrator,* 78 Va. 215;

*Baptist University* v. *Borden,* 132 N. C. 476; *Northern Trust Co.* v. *Wheaton,* 249 Ill. 606. We accordingly hold that the house and lot devised to Mrs. Nicodemus for life by the first clause of the will and the bank stock bequeathed to her for life by the second clause of the will should now be sold by the executor and the proceeds paid over to the grandchildren of the testator in accordance with the directions of his will, subject, however, to the rights of Mrs. Nicodemus, the widow.

The eighth paragraph of the bill alleged that the trust created as to the residue of the estate for the benefit of the grandchildren is void, so far as the corpus of the said residue is concerned, and that by a true construction of the will the testator died intestate as to the corpus of the residue, and that it passed to the heirs at law of the testator.

At the date of the death of Mr. Nicodemus his oldest grandchild was thirty-two years old and his youngest seventeen, and under the ninth clause of the will the estates of the grandchildren are now vested. The contention that the trust is void is not insisted upon, and we can discover no ground upon which such a claim can rest. But the position now taken by the appellant as stated in the brief of her counsel is, "that that portion of the residue, which it is necessary for the trustee to retain in order to provide for the annuities, is undisposed of by the testator; that is, that the testator has disposed of certain income from his estate, but is silent as to the disposition of the corpus necessary to raise that income."

In *Albert* v. *Albert,* 68 Md. 352, this Court expressed with much force and clearness the manner and spirit in which the duty of construing a last will and testament should be approached, saying: "The intention of the testator as gathered from the four corners of the instrument is to prevail, if there be apt words used to affectuate it, unless it contravene some positive principle of law or be frustrated by some unbending rule of construction assigning an inflexible meaning to particular words. In discovering that intention all parts of the

will are to be construed in relation to each other, without regard to the order in which they occur, and so as to form, if possible, one consistent whole. Even where technical words are used, though the testator will be ordinarily presumed to have used them in their legal sense, a different meaning will be given to them when the context clearly indicates that such technical import would defeat his manifest intention." In *Slingluff* v. *Johns,* 87 Md. 273, Judge Pearce said: "In *Commercial Building Association* v. *Mackenzie,* 85 Md. 136, the Court said: 'When a written instrument of whatever character is brought before a Court for adjudication, the first inquiry must be directed to its meaning. *Until this is ascertained every step in the proceeding, must be futile and useless* * * *. No general rules have been devised, which are adapted to all cases, and it is not possible, in the nature of things, that any can be devised. Courts must ascertain the meaning of written instruments when it is possible for them to do so, seeking the aid of all rational methods of interpretation.' These utterances may be properly repeated and emphasized here, as announcing the primary rule in construing written instruments; and it must be borne in mind in this connection, that 'the predominant idea of the testator's mind when discovered, is to be heeded, as against all doubtful and conflicting provisions, which might of themselves defeat it; and that the general intent, and the particular intent being inconsistent, the latter must be sacrificed to the former'."

It is a familiar rule "that every intendment is to be made against holding a man to be intestate who sits down to dispose of the rest and residue of his property." *Booth* v. *Booth,* 4 Ves. 407; *Dulany* v. *Middleton,* 72 Md. 67; *In re Gillman estate,* 126 Md. 636.

When the will of Mr. Nicodemus is examined in the light of these principles we cannot hold that he died intestate as to any part of his estate. By the seventh clause of his will he devised and bequeathed to Alexander Neill in trust for the uses and purposes set out in the will "all the rest and resi-

due" of his estate real and personal and wheresoever situated. It is obvious, therefore, that he did not intend to die intestate as to any part of his residuary estate. In this clause he directed the payment of certain annuities out of the trust estate. By the ninth clause he gave directions as to how and when the trust estate should be divided and distributed among his grandchildren. By the seventh clause of the will the trustee was charged with the duty of paying to each grandchild of the testator until each should attain the age of thirty years the sum of two hundred and fifty dollars annually. And in the tenth clause it was provided that: "The annual payment of two hundred and fifty dollars to each of my grandchildren as hereinbefore directed shall cease as to each of them upon him or her receiving his or her share of the principal of my estate."

Whilst the testator disposed of his whole estate, and whilst it is evident that he intended that the entire residuary estate should ultimately pass to his grandchildren, he did not intend that that entire estate should be paid over to them as soon as the eldest grandchild reached the age of thirty years. The whole scheme of the will forbids this construction. That he had no such intention is perfectly apparent from the provisions of the ninth clause, wherein, after providing for the distribution of the residue, he said: "Such payments of principal of my estate to my said grandchildren to be subject however and conditioned to the prior payment of the annual payments hereinbefore directed to be made to my children and grandchildren, it being my will and said trustee is hereby directed to retain at all times in his hands a sufficient sum of money or estate, the interest of which will be sufficient for the payment of said annual payments to my children and to such of my grandchildren as shall not have received payment of their part or portion of the principal of my estate." Another fact which shows that the testator contemplated partial distribution of the residue of his estate is that the proceeds of the sales of the property devised to the three daughters for

life will not be available for distribution until their respec-tive deaths.

We hold that Mr. Nicodemus did not die intestate as to any part of his estate; that the whole residuary estate is now vested in his grandchildren, but that the distribution of that portion of the corpus of the residue or of any part thereof which the trustee was directed to retain to pay the annuities can only be made in conformity with the ninth and tenth clauses of the will. The Court of Equity has now jurisdic-tion of the trust. It can direct what money the trustee must retain from time to time to pay the annuities. It has the power, and we see no difficulty in its passing such orders in the administration of the trust as may be necessary to give effect to the provisions of the will.

> *Order affirmed, the costs in this Court to be*
> *paid out of the trust estate.*