HENRY M. WIESENFELD ET AL. *v.* MOSES W.
ROSENFELD ET AL.
MINNIE WIESENFELD *v.* HENRY M.
WIESENFELD ET AL.

[Nos. 95, 96, October Term, 1935.]

*Decided February 6th, 1936.*

64

The causes were argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Malcolm H. Lauchheimer* and *C. Alexander Fairbank, Jr.*, with whom were *Lauchheimer & Lauchheimer* on the brief, for Henry M. Wiesenfeld and others.

*Charles McH. Howard*, for Moses W. Rosenfeld, Minnie Wiesenfeld, and others.

SLOAN, J., delivered the opinion of the Court.

By the residuary clause of her will, executed February 11th, 1891, Mrs. Betzey Wiesenfeld devised and bequeathed her estate as follows:

"Item; I give, devise and bequeath all the rest and residue of my worldly estate (all of the rest and residue of my lands, tenements, goods, chattels, rights and credits) unto my said executors their survivors and survivor, In Trust and confidence however for the uses, intents, and purposes herein presently mentioned and declared of and concerning the same, that is to say; In Trust for the use and benefit of my nine children, Caroline, David, Rebecca, Amelia, Hiram, Rose, Bernard, Robert and Joseph each share and share alike, for and during the term of his and her natural life, the net annual income or interest thereof to be twice in every year by my said executors (at that time however acting as my trustees) passed over and paid to each cestui que trust, into however his or her, as the case may be, own

hands and not into the hands of another, whether claiming by his or her authority or otherwise. And from and after the death of Caroline, Amelia, Rose, Bernard, Robert and Joseph respectively then unto and to the issue of the body of him or her so dying, living at the time of his or her death if more than one, share and share alike per stirpes and not per capita; but if he or she thus dying shall have died without issue of his or her body living at the time of his or her death, then unto my surviving issue share and share alike per stirpes and not per capita. And from and after the death of David and Rebecca, or either of them as to one half part of each of them in my trust estate (my estate thus held in trust) unto and to the issue of him or her so dying, if more than one, share and share alike per stirpes and not per capita; but if he or she (David or Rebecca) thus dying shall have died without issue of his or her body living at the time of his or her death, then unto and to the use of my surviving issue share and share alike per stirpes and not per capita; the survivor of those two children, my son Hiram, and their issue excepted; and as to the other half part of the one or the other of my children David and Rebecca, in my trust estate, leaving issue or none as the case may be, unto and to the use of my issue then living share and share like, per stirpes and not per capita; the survivor of those two children, and my son Hiram, and their issue excepted. And from and after the death of my son Hiram, then as to his share or part of my trust estate, unto and to the use of my issue then living share and share alike, per stirpes and not per capita; my children David and Rebecca their issue and Hiram's issue excepted. Should however Hiram's daughter Florence survive her father and marry, I give and bequeath to her the sum of one thousand dollars as a wedding present."

By another provision of her will she directed that her trust estate should be kept by her trustees "as one estate," and should not be sold or disposed of, nor should there be a partition of the same amongst her children

or grandchildren until the death of her "last surviving child shall take place."

Later, May 30th, 1893, she executed a codicil to her will; the provisions involved in this appeal being the second and third items, which are as follows:

"Second: By my said last will I have bestowed on my son Hiram a second part or portion of my trust estate for his life and after his death over in remainder to certain of my issue then living. I now, however, declare and say that should Hiram's present wife survive him then and thereafter shall my trustees named in my said last will have and hold one-half of my trust estate then held by them for Hiram's benefit at the time of his death for the use and benefit of his said wife for and during the term of her natural life, and from and after her death then as provided for in the will.

"Third: By my last will I have bestowed a certain part of my trust estate on my daughter Rose, for life; with remainder over as therein stated. I, now, however, declare and say that after her death, my said trustees shall hold one-half of her said part of my said estate for the use and benefit of Rose's son Moses Rosenfeld, for and during the term of his natural life, and from and after his death, then to and unto the issue of him my grandson Moses Rosenfeld, living at the time of his death share and share alike per stirpes and not per capita; but if he, my said grandson, shall die without issue living at the time of his death, then unto and to my issue then living, share and share alike per stirpes; and as to the other half thereof unto and to my issue living at the time of the death of my daughter Rose, share and share alike per stirpes and not per capita."

In the original will she had made her daughter Rose executrix of the will, along with her son Bernard, and son-in-law Joseph Miller, executors, but by the codicil she revoked the appointment of Rose, leaving the son and son-in-law as executors and trustees.

Eight of the nine children have died, leaving children, the order of their death being as follows: Caroline Rosen-

feld, 1900; Amelia Miller, 1903; David Wiesenfeld, 1916; Bernard Wiesenfeld, 1922; Rose W. Rosenfeld, 1927; Joseph Wiesenfeld, 1928; Hiram Wiesenfeld, 1932; and Rebecca Altmayer, 1934. Of the nine children Robert Wiesenfeld alone survives.

A court auditor had stated an account distributing the income for the year to February 11, 1934, by which he had distributed to the children of Rebecca Altmayer and David Wiesenfeld, respectively, 40/648 of the entire income of the estate, made up of the 36/648 to which they were entitled under the original will after the deaths of their parents, plus one-ninth of one-half of the share of Rose. To Mrs. Minnie Wiesenfeld, widow and sole devisee and legatee of Hiram Wiesenfeld, he had made a distribution of 40/648 of the income, made up of the 36/648 which she is to receive for life under the second item of the codicil, plus 4/648, which was one-ninth of one-half of the interest of Rose, and distributed to her, on the theory that she would receive the income for life, and that interest (one-ninth of one-half of one-ninth) in the corpus absolutely on the death of Robert Wiesenfeld. The auditor also distributed to Moses W. Rosenfeld the one-half of the income of his mother's share which he took for life by name under the third item of the codicil on the death of his mother, Rose, and one-ninth of one-half of her interest which he took as "issue" of the testatrix living at the time of the death of her daughter and his mother, Rose, whose sole issue he was. These are the only items in the auditor's account involved in this appeal, and it was only to the shares distributed to them out of Rose's share under the third item of the codicil that exceptions were filed.

The exceptions to the auditors' account were filed by the heirs and next of kin of Caroline Rosenfeld, Amelia Miller, Bernard Wiesenfeld, and Joseph Wiesenfeld, who would profit by a reduction in the distributions to David, Hiram, and Rebecca if made in accordance with the original will, and whose grounds of exceptions were as follows:

(1) That Minnie Wiesenfeld, widow 'of Hiram, is only entitled to receive one-half of such share as he would have had under the original will, or 36/648 of the income of the whole estate, and that she is not entitled to receive any portion of the estate or interest devised by the will and codicil to Rose Rosenfeld, and that those who claim by or from Rebecca Altmayer and David Wiesenfeld are not entitled to any part of Rose's portion of the estate, and are limited to the halves of ninths which they took under the will, or 36/648 each.

(2) That the auditor's account was stated on the theory that Rose, under the original will, was entitled to share in the distribution after their deaths in the portions of the estate devised and bequeathed to David, Rebecca, and Hiram, whereas by a proper construction of the will and codicil she should be classified with them, and excluded from the shares of their three interests by the original will given to her, Caroline, Amelia, Bernard, Robert, and Joseph, designated in both briefs as the "favored" children.

(3) That Moses W. Rosenfeld, son of Rose, is only entitled to receive one-half of his mother's share for life with remainder to his issue, and not, in addition thereto, one-ninth of the other half.

In ruling on the exceptions to the auditor's account, the chancellor decreed that it be ratified as stated as to everything except the distribution to Mrs. Minnie Wiesenfeld of one-ninth of one-half of Rose Rosenfeld's one-ninth, or 4/648 of the whole, and "that the said Minnie Wiesenfeld is entitled to receive one-half or two of such four shares for life under the terms of the codicil to the will of the said Betzey Wiesenfeld; but that the other half of said four shares, or two six hundred and forty-eighths (2/648) of the whole net income, which was so distributed to the said Minnie Wiesenfeld by said account, is distributable to and among the same parties and in the same proportions as by the terms of said will the one-half of the share of net income originally bequeathed to the said Hiram Wiesenfeld for life and which was not by said

codicil bequeathed to his said widow for life, is now distributable in and by said auditor's account.

"It is therefore Ordered that said account be and the same is hereby modified and altered by deducting from the share of net income thereby distributed to the said Minnie Wiesenfeld, the sum of $55.57, and by adding the amount so deducted to the shares of those distributees in said account to whom one-half of the share of net income originally distributed to Hiram Wiesenfeld is thereby distributed, and in the same proportions in which such one-half of said original share of Hiram Wiesenfeld is thereby distributed; and that said Auditor's account, with the changes hereby made therein, is finally ratified and confirmed." From this decree the exceptants appeal, and Minnie Wiesenfeld also appeals.

From the decree appealed from, as we see it, Moses Rosenfeld takes on the death of his mother the income from half of her portion of the whole estate, and absolutely, as surviving issue of the testatrix, receiving the income thereon during the life of his uncle Robert, one-ninth of one-half of his mother's portion of the estate, and with this we agree. The decree also determined that David's children, he having predeceased Rose, and Rebecca Altmayer, each took, *per stirpes*, one-ninth of one-half of Rose's share, and with this we agree. As to Hiram's ninth of half of Rose's share, the decree holds that he took no more than a life estate; and that half of the income which he took under the will, plus one-half of the income which he took from Rose's share, is all that his widow took, in other words, all that his widow gets is one-half for her life of that which Hiram had in his lifetime, and that after her death the corpus of her share would go to the six favored children, and, in so far as this affects the one-ninth of one-half which Hiram took from Rose's interest, we disagree with the chancellor. These conclusions mean that the auditor's account as stated should have been ratified.

The exceptants, appellants in No. 95, contend that, notwithstanding the language of the third item of the codicil

disposing of Rose's share of the whole estate, differing from that of the will so far as it concerns David, Rebecca, and Hiram, the will and codicil should be read together, and their interests in Rose's share should be subject to the same limitations as the shares left to them by the will. The chancellor did this with respect to the share of Hiram, but held to the literal meaning of the codicil as to David and Rebecca, unaffected by the will.

The exceptant's idea is that the will shows a general intent to favor six of the children, reduced, they argue, to five by the third item of the codicil, at the expense of the others, and that this idea must prevail under the rule that "the predominant idea of the testator's mind when discovered is to be heeded, as against all doubtful and conflicting provisions, which might of themselves defeat it; and that, the general intent and the particular intent being inconsistent, the latter must be sacrificed to the former" (*Davis v. Hilliard*, 129 Md. 348, 357, 99 A. 420, 423). But "rules are never to be applied to defeat the intention when it is clear" (*Miller, Construction of Wills*, 63). It has been said by this and other courts many times that the intention of the testator is the law of wills, and that the words employed shall be the guide by which to ascertain that intention, and it is the duty of courts to give effect to the expressed intention so long as consistent with the rules and policy of the law. *Miller, Construction of Wills*, 40, and cases there cited. The rule, however, is more easily stated than applied, for here we have a will about which able counsel on both sides and court all disagree. They do agree that there are not many helpful authorities which can be applied to the provisions of this will. Of the few cases cited, the only really helpful one is *Marshall v. Safe Deposit & Trust Co.*, 101 Md. 1, 60 A. 476, 477, and it might be said here, as it was there, that "in considering questions like those here involved, adjudications interpreting other wills are more apt to be confusing than helpful."

In the will now considered it is not easy to say whether there is any general, controlling, motive or intent. The

testatrix evidently thought more of some children or grandchildren than she did of others. She does not say why, after the expirations of the life estates of the children, who were treated alike so long as they all lived, she created the inequality that began with the death of the first of the "unfavored" children to die. The will did not classify the beneficiaries in the usual way. She named each of her children, and as they should die she said just what course the ninth interest of that child would take, and it was made easy to follow, interpret, and calculate, even though the will be highly technical.

The exceptants contend that Rose was taken out of the so-called "favored" class in the will and put into the "unfavored" class along with David, Rebecca, and Hiram. This means that we are asked to read into the third item of the codicil disposing of Rose's share certain language not there appearing, but which does appear in the will with respect to the shares of David, Rebecca, and Hiram, but there we run into trouble, as the devolution of Hiram's share differs from that of David and Rebecca, none of whom under the will share in the interests of the so-called favored children, who eventually take *per stirpes* one-half of David's and Rebecca's shares, and all of Hiram's, with the possible exception of $1000. So, if Rose is to be classified with the unfavored children, which would it be—with David and Rebecca or with Hiram?

The will, however, is not the last disposition of all of the testatrix' property. Over two years after the execution of the will, on May 30th, 1893, Betzey Wiesenfeld executed a codicil which made some radical changes in her will as to Hiram's wife and her daughter Rose, and the latter's son, Moses W. Rosenfeld. The rule is, of course, that a will and codicil should be reconciled as far as possible, but, if there is any conflict or repugnancy between them, the codicil, as the last expression of the testator's will and intention, must be given effect. *Lee v. Pindle*, 12 G. & J. 288; *Boyle v. Parker*, 3 Md. Ch. 42; *Fairfax v. Brown*, 60 Md. 50; *Thomas v. Safe Deposit &*

*Trust Co.*, 73 Md. 451, 21 A. 367, 23 A. 3; *Hutchins v. Pearce*, 80 Md. 434, 31 A. 501; *Miller on Construction of Wills*, 173, 174.

In the will the testatrix provided that, upon the deaths of David and Rebecca, one half of their shares, ninths, should go to their respective issue, and the other half to the issue of the testatrix, then living, "the survivor of those two children, and my son Hiram, and their issue excepted." When we come to the third item of the codicil, written over two years after the will, after providing for Moses, by leaving half of his mother's share in trust for his use for life, the other half shall go "unto and to my issue living at the time of the death of my daughter Rose, share and share alike per stirpes and not per capita." So far as the issue of the testatrix are concerned or interested in the property of the testatrix, they are her "last words," uttered without regard to her will or any other expression of intention. She had evidently had a change of mind (or heart) as to Rose's share of her estate, inconsistent with her original disposition of Rose's ninth, and as her "last words" they must be given effect, regardless of the provisions of the will for Rose and her son. This provision so differs from the original will with regard to Rose's part of the estate that it cannot be reconciled with the will, and its literal meaning must be adopted, and its literal meaning is that, at the death of Rose, the issue of Betzey Wiesenfeld then took accrued shares (69 *C.J.* 351) in one-half of Rose's interest. They were vested interests in the issue of Betzey Wiesenfeld when Rose Rosenfeld died, with the right of possession delayed until the death of the last surviving child of the testatrix. *Wilson v. Pichon*, 162 Md. 199, 159 A. 766, and cases there cited; *Marshall v. Safe Deposit & Trust Co.*, *supra.*

In the will no provision had been made for the widow and daughter of Hiram, and, with his death, his ninth would have gone to the six favored children or their children.

In the second item of the codicil the testatrix said: "I have bestowed on my son Hiram a certain part or por-

tion of my trust estate for life and after his death over in remainder to certain of my issue then living"; that is, to her "issue then living," her "children David, Rebecca, their issue and Hiram's issue excepted." She then goes on to say that "should Hiram's present wife (not any other wife) survive him then and thereafter" her trustees should hold one-half of her trust estate, "then held by them for Hiram's benefit at the time of his death," for the use and benefit of said wife "during the term of her natural life, and from and after her death then as provided for in the will." All that she had "bestowed" on her son Hiram was the income of a one-ninth interest in the whole estate, and one-half of this is what she intended his "present wife" to have for her lifetime, and that thereafter that half should go "as provided for in the will"; that is, to the six "favored" children and their issue. To our minds, this provision can have only one meaning, and that is that the one-half of the share allotted to Hiram, one-ninth of the whole estate, should be halted for the lifetime of Hiram's widow before it went to the six favored children or their issue, to whom it was destined to go under the will, and, if Hiram had died before Rose, there could and would have been no other result as to his share.

But, say the exceptants, the apparent absolute one-ninth of one-half which was left to Hiram out of his sister Rose's share is now fettered with the provisions of the will with respect to Hiram's original one-ninth life share, and that share now resurvives to the favored six. The third item of the codicil, as to one-half of Rose's part, so far as the language of the item discloses, was general in its application to the issue of the testatrix living at the time of the death of her daughter Rose, "share and share alike per stirpes," and Hiram was one of them; the shares of Rose's share which went to the testatrix' issue were then accrued and vested, with the right to possession delayed for the lifetime of Robert. *Supra.* None of them were life estates in the usual sense, because the remaindermen were also the life tenants of

those interests in one-half of Rose's part. The will had not created a life estate in Hiram in excess of one-ninth, and there is nothing in the codicil from which it can be implied that the testatrix ever contemplated that his life estate would ever exceed one-ninth of the whole estate. To say that there is anything in the codicil to put a limitation on Hiram's share in Rose's interest is to insert a limitation which is not written there; he simply takes his place, on the death of Rose, as one of the issue of the testatrix, and his share follows the course of the others who are classified with him. Suppose he had predeceased his sister Rose, his daughter, had she survived her aunt, would have taken as one of the issue. To yield to the exceptant's contention would mean that Hiram's daughter might take an absolute interest under the third item of the codicil, but he could not if he survived. No such anomalous situation can be inferred from the language of the third item of the codicil. The auditor was right, and his account should have been ratified, and an order or decree ratifying it, as stated, should have been passed.

The appellant in No. 96 raised the question of estoppel against the other appellants, because similar auditor's reports had been ratified without objection, but our decision makes the discussion of this question unnecessary.

> *Decree reversed in part and affirmed in part, and case remanded for a decree to conform with this opinion, the costs, by agreement of all concerned, to be paid out of the corpus of the estate.*