# WILLIAM E. HARNE

*vs.*

# MINNIE E. HARNE.

*Divorce—Adultery—Condonation.*

Plaintiff's evidence as to his relations with his wife subsequent to the time when his suspicions as to her fidelity were aroused, *held* to show condonation. p. 126

That the parties to the proceeding sought to mislead the court into granting a divorce, which it would not have done had all the facts been before it, involves a case of collusion. p. 126

*Decided April 5th, 1922.*

Appeal from the Circuit Court for Washington County, In Equity (WAGAMAN, J.).

Bill by William E. Harne against Minnie E. Harne for divorce. From a decree dismissing the bill, plaintiff appeals. Affirmed.

The cause was submitted to BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*J. Cleveland Grice* and *W. P. Wachter,* for the appellant.

*Wagaman & Harshman,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The parties to this cause were residents of Western Maryland. They went to Baltimore City and were married there November 10th, 1910, and for about a year after the marriage

continued to live in Baltimore City. They then returned to Western Maryland, Mrs. Harne going to the residence of her mother, who kept a boarding house for summer visitors close to Pen Mar, and Mr. Harne went to Hagerstown, where he was in the candy business with his father.

They continued to sustain the relation of husband and wife until the 14th of April, 1920, when they separated, and in June of 1921 Mr. Harne filed a bill for divorce against his wife upon the ground of adultery. The case was tried in the Circuit Court for Washington County and on the 8th of October, 1921, a decree was filed dismissing the bill of complaint, from which decree the present appeal has been taken.

The Circuit Court of Washington County dismissed the bill upon the ground that the offense has been condoned, and this make it necessary to examine somewhat the evidence given in the case. The only witnesses in the case are the plaintiff himself and a Mr. Burgesser. The plaintiff testifies that, in the summer of 1919, he suspected his wife of infidelity, apparently basing his suspicion upon being told by a doctor to whom he went that he was suffering from venereal disease. The doctor was not produced as a witness, nor apparently was any attempt made to so produce him, and this much of the evidence is therefore clearly hearsay. Nor does the plaintiff state from what form, if he knew, of venereal disease he was suffering. This disease he ascribes to having contracted it from his wife, and speaks of her going to a hospital in Baltimore for treatment, but upon further examination it appears that what Mrs. Harne was treated for in Baltimore was not venereal disease but appendicitis, for which an operation was performed and for which Mr. Harne paid the bill. The plaintiff fixes the time of his suspecting the infidelity of his wife as in the summer of 1919, when he saw his wife and Burgesser frequently dancing together at the park at Pen Mar, but apparently the only thing to which he then objected was the fact of the dancing, for he testifies positively that he did not at that time suspect any improper

relations. He also testifies that, shortly subsequent to this, his wife admitted to him that she had had improper relations with Burgesser, but subsequently denied it, and he was in doubt apparently as to which statement he was to believe, her original admission of guilt or her subsequent denial, and this state of mind seems to have continued down until the testimony in the case was taken in August, 1921, when Mr. Burgesser, whom he barely knew, approached him on the street in Hagerstown, and stated to him that he had had improper relations with Mrs. Harne some five or six times, some of the occasions being in Mrs. Harne's room in a cottage not far distant from the cottage where Burgesser was staying, and once in a swing on the porch. The first of these improper relations Burgesser fixes as about ten days after he first met Mrs. Harne, when he went to the cottage where she was staying, but the witness is unable to state the year in which these occurrences are supposed to have taken place— first fixing it as 1919, later as 1920, and then recurring to the first stated date of 1919, and from Mr. Harne's testimony he appears to have been in doubt whether his wife had been unfaithful or not up until the time when he met Burgesser in 1921.

The bill of complaint was filed on the 8th of July, 1921, the testimony was taken in August, and if the statement in the evidence is correct, that Mr. Harne first had what he now regards as definite knowledge of his wife's infidelity, only some six or seven weeks before the filing of the bill, it is open to some doubt whether he had such knowledge at the time when the bill was filed. One thing is certain, that after the filing of the bill there was nothing which could be regarded as condonation. It is true that, subsequent to the time fixed of the alleged illicit intercourse having taken place, Mr. Harne had sexual relations with his wife, though he seeks to minimize the effect of these, saying they were of a limited character merely. For condonation it is necessary to base it upon these alleged acts of intercourse. The testi-

mony as to unfaithfulness can only be established by the evidence of Burgesser, and that he should keep this within his breast for a period of one or two years, and then himself seek Mr. Harne to tell him of it, is so foreign to the usual course as to throw not a little doubt as to Mr. Burgesser's evidence, and this is still further emphasized by his uncertainty on matters of which the difference in years is but an example, and Mr. Harne's manifest doubt as to which statement of his wife to believe further embarrasses the situation.

Condonation requires a full knowledge of all the facts giving rise to the cause for divorce. *Merrill* v. *Merrill,* 41 N. Y. App. Div. 347, 58 N. Y. Supp. 503; *Colson* v. *Colson,* 140 Ind. 310; *Uhlmann* v. *Uhlmann,* 17 Abb. N. C. 236; and cases cited in 2 *Words and Phrases,* 1411 *et seq.* But the plaintiff's own evidence as to his relations with his wife subsequent to the time when he alleges his suspicions to have been aroused amply justifies the action of the Circuit Court for Washington County in dismissing the bill.

The decree might well have been based upon a different ground, the collusion of the parties. Collusion is a form of fraud, and as such is rarely possible to be proven by direct evidence. As defined in *Beard* v. *Beard,* 65 Cal. 354, it means a secret agreement between husband and wife and co-operation between them for fraudulent purpose of obtaining a divorce. A peculiarity of this case is that Mrs. Harne, though having, by her answer, denied the illicit relations alleged in the bill, does not take the stand in support of the averments of her answer. This may, of course, have arisen from either one or two entirely different reasons. She may not have been willing to go on the stand and commit perjury, or she may have desired to see the divorce obtained and therefore evaded testifying. The latter, together with the uncertain evidence of her husband, would make a clear case of collusion, the purpose being to mislead the court into granting a divorce which it would not have done had all of the facts been fully before it, and the attempt of a husband and wife to

impose upon the court is of course fraudulent, and forms a sufficient ground for refusing the relief asked in the bill. 1 *Words and Phrases,* second series, 761; *Doeme* v. *Doeme,* 96 N. Y. App. Div. 284, 89 N. Y. Supp. 225; *Griffiths* v. *Griffiths,* 69 N. J. Eq. 689; *Sheehan* v. *Sheehan,* 77 N. J. Eq. 411.

Taking either view of this case, therefore, the action of the Circuit Court for Washington County was correct and the decree will be affirmed.

> *Decree affirmed, appellant to pay the costs above and below.*